ISANTI COUNTY FAMILY SERVICES AND WELFARE DEPARTMENT on Behalf of Judy EDWARDH, petitioner, Respondent,

v.

Stephen R. SWANSON, Appellant.

No. CO–86–500.

Court of Appeals of Minnesota.

Oct. 7, 1986.

Gregory E. Korstad, Isanti Co. Atty., Cambridge, for respondent.

Robert N. Schlesinger, St. Paul, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

SEDGWICK, Judge.

Isanti County, on behalf of Judy Edwardh, sought to recover child support and birth expenses from Stephen Swanson nearly one year after his paternity had been adjudicated. The support obligation was based on Minn.Stat. § 518.551 and past support was set at $7,000, payable by $50 a month. Swanson appeals the support order. We affirm in part, reverse in part and remand.

## FACTS

Stephen Swanson fathered a child Tasha Edwardh born out of wedlock January 19, 1981. On January 24, 1984, a summons and complaint alleging paternity was served on Swanson. Paternity was adjudicated January 2, 1985 but the judgment did not include birth expenses or an order for either past or future support. On September 24, 1985, 20 months after commencement of the paternity action and nine months after paternity adjudication, Isanti County moved for a judgment of birth expenses, past support provided by the county and an order for current support. When Swanson was served with this motion, his second child by a present marriage was one year old.

Prior to the support hearing, Swanson consulted an attorney, gave the attorney his income figures and the attorney calculated his guideline support obligation to be $84 per month. Swanson was given the attorney's notes and represented himself at the hearing. Swanson has held several jobs since 1981, some paying minimum wage and some paying in excess of $8.00 per hour. He has also had periods of unemployment. The record at the support hearing on Swanson's income consists mainly of facts brought out on cross-examination by the Isanti County attorney. Swanson had lost his tax returns while working for a time in Seattle. He did produce some pay stubs and testified his current work is seasonal and that he receives unemployment compensation off-season. The court made specific findings covering the following periods of employment:

January 1982 through June 1983: $3.35 an hour with net monthly earnings of $460.

July 1983 through February 1984: net monthly earnings of $997 (gross $1,330).

July 1984 through April 1985: $8.00 per hour, with a net per month of $1,032.

May 1985 to present: $8.93 per hour, or a net monthly income of $1,228.

The court found Swanson has paid nothing to the support of the child, that the birth expenses incurred by Isanti County were $1,217.97, and that AFDC provided for the child through June 1985 was $16,865 at the continuing rate of $331 per month.

The trial court then entered an order assessing past support to January 1982 in amounts based on the guideline figures considering the average income at each employment period covered by the findings,

i.e., January 1982 through June 1983 = $64 per month; July 1983 through March 1984 = $239 per month; July 1984 through April 1985 = $258 per month; May 1985 through October 1985 = $307 per month, the total amount of past due support was $6,926. Judgment was entered against Swanson for $7,000 constituting reimbursement for one-half of the expenses of the birth of the child and past due support from birth, through October 1985. Monthly support commencing November 1, 1985 was set at $307. The court did not consider appellant's obligation to support his second child or the substantial medical bills incurred for his wife and child in connection with her birth. Swanson's motion for a new trial was denied, but the court amended its original order to reflect appellant's 32 hour work week as of October 24, 1985, reducing his net monthly earnings to $926. The trial court also found that since February 1986 Swanson was laid-off with a net monthly from unemployment compensation of $658.

Swanson was also found to be reasonably able to pay $50 per month toward the $7,000 judgment. Support was reduced to $213 a month when he is employed full time, $307 when he earns $1,228 per month net, and $118 per month when he receives unemployment compensation.

## ISSUES

1. Must a subsequently born child be included in the guidelines calculation when support is set for a prior child receiving public assistance?

2. Did the trial court erroneously arrive at a past child support figure by miscalculating the two year statute of limitations and failing to consider what appellant could reasonably afford to pay?

3. Should appellant have been granted a new trial on grounds of excusable neglect, incompetency of counsel or appellant's functional illiteracy?

## ANALYSIS

1. We believe the legislature intended, in public assistance cases, a strict application of the guidelines. Minn.Stat. § 518.551, subd. 5(a), mandates that the court in public assistance cases set child support as

provided in this subdivision. * * * In other cases the court shall order child support in accordance with the guidelines and the other factors set forth in paragraph (b) and any departure therefrom.

1986 Minn.Laws ch. 406, § 4.

Minn.Stat. § 518.551, subd. 5(b), provides:

In addition to the child support guidelines, the court shall take into consideration the following factors in setting or modifying child support:

\* \* \* \* \* \*

(4) the amount of the aid to families with dependent children grant for the child or children; and

(5) the parent's debts as provided in paragraph (c).

*Id.*

Swanson contends that the trial court should consider the large medical bills incurred for the birth of his second child, but § 518.551, subd. 5(c), states:

In establishing or modifying a support obligation, the court may consider debts owed to private creditors, but only if:

(1) the right to support has not been assigned under § 256.74 * * *.

*Id.*

In addition, Minn.Stat. § 518.551, subd. 6 (1984), states that the court "shall set child support according to the guidelines in subd. 5" if it finds during a parentage or dissolution proceeding that notice has not been given to the public authority. It further states that if notice has not been given to the public authority, and the latter determines that a court has entered judgment for child support in an amount lower than required by the guidelines, "it shall move the court for a redetermination of the support payments ordered *so that the support payments comply with the guidelines."* *Id.* (emphasis added).

Although this is not a failure to notice case, the point seems clear—apply the guidelines amount in public assistance cases.

Even in non-public assistance cases, the supreme court has said:

> Children by a subsequent marriage, while relevant to a trial court's decision, are not to be factored into the child support guideline tables in Minn.Stat. § 518.-551, subd. 5 (1984).

*Erickson v. Erickson,* 385 N.W.2d 301, 304 (Minn.1986).

The supreme court also differentiates between public assistance and non-public assistance cases in the type of findings required. In *Moylan v. Moylan,* the court stated:

> We therefore require that in all child support cases not involving public assistance, the trial court must make specific findings of fact as to the factors it considered in formulating the award. This rule applies regardless of whether the award deviates from the child support guidelines in Minn.Stat. § 518.551, subd. 5. In cases which do involve public assistance payments, any deviation from the child support guidelines should be accompanied by express findings supporting the deviation.

*Moylan v. Moylan,* 384 N.W.2d 859, 863 (1986).

Although the result is harsh, we do not believe the trial court erred in failing to consider the needs of a child subsequently born to Swanson where the first child is being supported by AFDC, or in strictly applying the support guidelines.

■ 2. The trial court calculated past support from January of 1982, regarding the action as a continuation of the earlier paternity adjudication and consequently governed by Minn.Stat. § 257.66 (1984). The support action, however, should be viewed as a request for contribution under Minn.Stat. § 256.87 (Supp.1985). Since the trial court had previously adjudicated paternity, and entered judgment, the paternity action had ended. As a result, this case involves a separate and distinct action for contribution to defray the county public assistance expenses. Minn.Stat. § 256.87 contains a statute of limitations for past support running backward from commencement of the action. The phrase "two years immediately preceding the commencement of the action" refers to the filing of this action for contribution rather than the paternity adjudication. Minn.Stat. § 256.87, subd. 1 (Supp.1985).

Respondent's motion for contribution was dated September 4, 1985. Appellant received notice on September 24. Since the action began in September 1985, contribution cannot reach back past September 1983. In *County of Anoka v. Richards,* 345 N.W.2d 263 (Minn.Ct.App.1984), contribution was sought on April 28, 1983. Contribution was calculated from April, 1981—two years prior to commencement of the action. This court also found the earlier paternity action lacked relevance with regard to contribution.

> Appellant's arguments are not persuasive. The only significance the 1978 paternity adjudication has to the present action for reimbursement of AFDC expended is that it establishes that the appellant is the father of the twins and imposes upon him an obligation to support his children.

*Id.* at 265. The trial court should calculate past support two years from the month the county asked for contribution.

■ Appellant argues the calculation of past support should reflect what "the parent is reasonably able to pay." Minn.Stat. § 256.87, subd. 1 (1984). The section was amended, however, to read "which the parent has had the ability to pay." *Id.* (Supp. 1985). Past earnings may now be considered rather than simply current income levels.

■ 3. Appellant alleges "excusable neglect" as grounds for a new trial.

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment * * *, order, or proceeding and

may order a new trial or grant such other relief as may be just for the following reasons: (1) Mistake, inadvertence, surprise or excusable neglect * * *.

Minn.R.Civ.P. § 60.02.

Appellant received notice of the child support hearing and consulted an attorney. According to Swanson, the attorney believed his attendance at the hearing was not necessary. Appellant received the attorney's calculations that support would be $84 per month, based on two children, and represented himself. After the court set child support at $307 a month and assessed past support and birth expenses, appellant hired an attorney.

In order to receive a new trial for excusable neglect, appellant must satisfy a four-part test.

> [I]t is a cardinal rule that, in keeping with the spirit of Rule 60.02, in furtherance of justice, and pursuant to a liberal policy conducive to the trial of causes on their merits, the court should relieve a defendant from the consequences of his attorney's neglect in those cases where defendant—
>
> " * * * (a) is possessed of a reasonable defense on the merits, (b) has a reasonable excuse for his failure or neglect to answer, (c) has acted with due diligence after notice of the entry of judgment, and (d) [shows] that no substantial prejudice will result to the other party."

*Conley v. Downing,* 321 N.W.2d 36, 40 (Minn.1982) (quoting *Finden v. Klaas,* 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964)).

Although appellant's attorney may have been lax and neglected to properly represent and counsel Swanson, the excusable neglect test cannot be satisfied. Appellant, in retrospect, does not possess a "reasonable defense on the merits." Appellant's allegation that subsequent children must be factored in any guidelines' calculation is not born out by Minn.Stat. § 518.551 or *Moylan.* Unless every element of the test is satisfied, a new trial based on excusable neglect must be denied. Also, the court did amend its findings based on Swanson's affidavit in support of his motion and the amended findings and order accurately reflect the uncertainty of his earnings and ability to pay support.

## DECISION

The trial court did not err in failing to consider the needs of appellant's second child when setting support for his first child who is supported by AFDC. The trial court erred in determining that the two year statute of limitations on past support began to run from the commencement of the paternity action when the judgment of paternity was silent on birth expenses and past and future support. The trial court did not err in denying appellant's motion for a new trial. We remand with instructions to amend the judgment to reflect the amount of past support from September 24, 1983 instead of January 1982.

Affirmed in part, reversed in part and remanded.