**In re the Marriage of Karoline MANCUSO, Petitioner, Respondent,**

v.

**Donald M. MANCUSO, Appellant.**

**No. C9–87–747.**

Court of Appeals of Minnesota.

Jan. 5, 1988.

Steven A. Sicheneder, North Branch, for petitioner, respondent.

Douglas G. Sauter, Parker, Satrom, O'Neil, Lindberg & Sauter, Ltd., Cambridge, for appellant.

Scott A. Hersey, Isanti Co. Atty., Anne M. Taylor, Asst. Isanti Co. Atty., Cambridge, for amicus curiae County of Isanti.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LOMMEN,\* JJ.

## OPINION

HUSPENI, Judge.

Donald Mancuso appeals from the judgment and decree dissolving his marriage to respondent Karoline Mancuso. He argues that the trial court erred in (1) granting joint legal custody of the parties' minor child but granting physical custody to respondent during the school year and physical custody to appellant during the summer, (2) failing to depart downward from the child support guidelines of Minn.Stat. § 518.551, subd. 5, (3) awarding spousal maintenance to respondent, and (4) making an unequal distribution of the marital and nonmarital property. Respondent seeks review of the trial court's failure to grant custody of appellant's four children from a previous marriage to her. Respondent also objects to the court's failure to award her attorney fees. We affirm in part, reverse in part and remand.

## FACTS

The parties were married on August 11, 1979. The decree dissolving the marriage was entered on February 2, 1987.

Appellant's four children from a previous marriage were born in 1974, 1975, 1977 and 1978. Appellant has both physical and legal custody of these children but receives no support money from the children's natural mother. Respondent did not adopt these children. One child was born of the parties' marriage on September 3, 1980. This child has resided with respondent since the parties' separation. Appellant's four children have resided with him.

The trial court found that respondent was receiving $532 per month in child support, through AFDC, at the time of the hearing. According to the trial court, one-half of this amount was for the support of the parties' minor child and one-half was for the support of respondent's daughter from a previous marriage. (Respondent's daughter's custody or support is not at issue in this case.)

The court granted to the parties joint legal custody of the child of the marriage. Respondent was to have physical custody during the school year and appellant physical custody during the summer months. The court denied respondent's request that she be granted custody of appellant's children from his previous marriage, but did give her visitation rights. The custody arrangement ordered by the trial court followed the recommendation of a custody study prepared for the court. The report contained a careful analysis of the needs and desires of the children, and an analysis of the ability of the parties to care for the children measured with reference to Minn. Stat. § 518.17. The study concluded that legal custody of the parties' child should be shared, with the split of physical custody to be as ordered by the court. The report further recommended that the children by appellant's previous marriage should remain in his custody.

The trial court ordered appellant to pay $506.25 per month to respondent for the

\* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

support of their minor child, which amount was 25% of appellant's net monthly income—the guideline amount for one child.

The trial court awarded most of the parties' property, primarily farm equipment, to respondent. The court found that most of this property was purchased with money respondent received through inheritance. The trial court also ordered appellant to hold respondent harmless for debts which totaled nearly $13,000.

The trial court awarded respondent $100.00 per month in "rehabilitative spousal maintenance," which is to continue until respondent's daughter leaves the household, is emancipated, or is no longer a dependent for AFDC purposes. When this occurs, maintenance is to decrease to $50 per month. The court denied respondent's request for attorney fees.

Finally, Isanti county, in its amicus brief, argues that the trial court erred in ordering appellant to reimburse the county for one-half of the AFDC amount received by respondent ($266.00 per month). The county argues that appellant should be ordered to pay $434.00 per month, the cost it claims is expended on one child per month.

## ISSUES

1. Did the trial court err in refusing to make a downward departure from the amount of child support called for in the guidelines?

2. Did the trial court err in its custody arrangement for the parties' minor child?

3. Did the trial court err in its division of the property?

4. Did the trial court err in granting respondent $100.00 per month in rehabilitative maintenance?

5. Did the trial court err in refusing to grant respondent attorney fees?

6. Did the trial court err in ordering appellant to pay only $266.00 per month as reimbursement to Isanti county?

## ANALYSIS

### I.

This court has recently summarized the standard to be utilized when reviewing a trial court's decision regarding an award of child support:

The trial court has broad discretion with respect to the support of children. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn. 1984). We will not reverse a trial court's decision unless that decision is clearly erroneous. *Id.* at 51. If the determination has an acceptable and reasonable basis in fact, it must be affirmed. *DuBois v. DuBois,* 335 N.W.2d 503, 507 (Minn.1983).

*Huston v. Huston,* 412 N.W.2d 344, 347 (Minn.Ct.App.1987). Mindful of the broad discretion vested in the trial court in regard to establishment of a support order, we nonetheless are left with the firm conviction that this support order cannot stand. Our reasons for remand on this issue are several.

The trial court made the following pertinent findings in regard to child support:

### IX.

That the [appellant] is the father of four other minor children * * *. That the natural mother of these four children pays no child support and the [appellant] has no source of support other than his earnings to support these children.

### X.

That currently the [appellant] lives in the home of his parents in Fridley, Minnesota, paying room and board of $600 per month.

### XI.

[Appellant] is employed as a truck driver by Ryder/Pie and earns a monthly net income of approximately $2,025.00.

### XII.

That the [appellant's] current monthly living expenses while living in his parents' home to support himself and his four minor children total $1,806 per

month, including the $600.00 per month rent.

\*    \*    \*    \*    \*    \*

## XIV.

That [respondent's] necessary monthly living expenses for herself, her daughter and the minor child of the parties, \* \* \* are \* \* \* $1,052.00.

The following relevant conclusion of law addresses the issue of child support.

## IV.

For the purpose of determining child support, [appellant's] net monthly income is $2,025.00. Under Minnesota Statutes § 518.551, [appellant's] obligation would be 25% of this amount, or $506.25. [Appellant] shall reimburse the county agency for AFDC benefits paid [respondent] up to the amount paid on behalf of [the parties' minor child] $266.00 per month. This reimbursement up to $266.00 shall be paid only during [the minor child's] school year and only while [respondent's daughter] is considered a dependent for AFDC benefit purposes. When [respondent's daughter] is removed as a beneficiary of AFDC payments [appellant] shall pay 25% of his net monthly income as child support to [respondent].

Minn.Stat. § 518.551, subd. 5(b) (1986), states:

In addition to the child support guidelines, the court shall take into consideration the following factors in setting or modifying child support:

(1) all earnings, income and resources of the parents, including real and personal property;

(2) the financial needs and resources, physical and emotional condition, and educational needs of the child or children to be supported;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved;

(4) the amount of the aid to families with dependent children grant for the child or children; and

(5) the parents' debts \* \* \*.

■ In "all child support cases not involving public assistance, the trial court must make specific findings of fact as to the factors it considered in formulating the award." *Moylan v. Moylan*, 384 N.W.2d 859, 863 (Minn.1986). In cases which do involve public assistance, a trial court's order setting support according to the guidelines can be affirmed absent specific findings. However, neither *Moylan* nor section 518.551 mandates that we affirm an order setting support according to the guidelines simply because a child is the beneficiary of AFDC. Where, as here, the best interests of four children are jeopardized while the best interests of one child are served, we cannot uphold a rigid adherence to the guidelines.

■ This court has said before that the guidelines cannot be applied mechanically. *Linderman v. Linderman*, 364 N.W.2d 872, 875 (Minn.Ct.App.1985). This is especially true where a person is supporting children in two homes. *Packer v. Holm*, 364 N.W.2d 506, 507 (Minn.Ct.App.1985). We have previously upheld as within the trial court's discretion a strict application of the guidelines in cases involving AFDC despite the obligor's support of children in two households. *Isanti County Family Services v. Swanson*, 394 N.W.2d 180, 183 (Minn.Ct.App.1986).[1] However, here we are convinced that consistent with its own findings the trial court was obligated to give more intensive consideration to the existing obligation of appellant to support his four minor children residing with and totally dependent upon him.

---

**1.** While the broad language of *Isanti County* may appear to reach to the facts here, the specific holding of that case was that the trial court did not err in failing to consider the needs of a child subsequently born to the obligor where the first child is being supported by AFDC or in strictly applying the guidelines of section 518.-

551. *Id.,* 394 N.W.2d at 183. In this case, we conclude that because the financial responsibility for support of four children of a prior marriage falls solely upon appellant, this case is uniquely fact-specific and, as such, cannot be governed by an earlier uniquely fact-specific case.

The trial court found appellant's net monthly income to be $2,025.00, and his monthly living expenses to be $1,806.00. Despite this, the court ordered him ultimately to pay $506.25 per month in child support.[2] This left a shortfall of $287.25 per month, a shortfall that rose to $387.25 per month when the spousal maintenance appellant was to pay respondent was added. We believe that appellant's compliance with the support and maintenance obligations set forth in the decree would almost certainly result in undue hardship for appellant's four remaining minor children. While we do not minimize appellant's obligation to the child of this marriage, the trial court's order of guidelines support served to ignore the responsibility of appellant to support these prior children, a responsibility recognized by the court in its findings.

Further, we believe that a strict application of the guidelines in this case would be inconsistent with the intent of Minn.Stat. § 518.551 (1986). Section 518.551 provides that a court when calculating an obligor's net income shall deduct from total monthly income "a Child Support or Maintenance Order that is Currently Being Paid." The effect of blindly applying guidelines in cases which involve both public assistance and an obligor who has children from a previous marriage is tantamount to a declaration that a parent's obligation to these prior children will be recognized only when these children reside elsewhere than with the obligor and the obligor is under a court order of child support. We cannot accept that the legislature would have intended such an inequitable application of the statute.

Finally, this court recognized in *County of Ramsey v. Faulhaber*, 399 N.W.2d 617, 619 (Minn.Ct.App.1987) that an obligor could not "avoid his support obligation by voluntarily incurring new liabilities, including obligations to a second family." We deem it unacceptable that the impact of these words sometimes results in adverse economical consequences to children of a subsequent marriage. Yet it is equally unacceptable that the converse be mandated and that children of an earlier marriage must be adversely affected as a result of blind adherence to statutory "guidelines." Surely, a balance must be struck here, and a reasonable child support level reached after careful consideration and weighing of *all* relevant factors, including appellant's sole responsibility for support of five minor children, not just one.

As additional guidance to the trial court on remand, we state our rejection of appellant's urging that the "equal treatment method" be employed. *See Wollschlager v. Wollschlager*, 395 N.W.2d 134, 135 (Minn.Ct.App.1986).[3] While this method of calculation may be appropriate in some fact situations, it may work an unfairness in others. *Bredeson v. Bredeson*, 380 N.W. 2d 575, 578 (Minn.Ct.App.1986). Further, this court has been reluctant to impose an automatic application of this method. *Id.* Therefore, we leave it to the discretion of the trial court to choose the most appropriate method of calculating appellant's support obligation for the parties' minor child.

## II.

■ Appellant next argues that the trial court erred in granting respondent joint legal custody of the couple's minor child and giving her physical custody of the parties' minor child during the school year. Appellate review of a custody determination is "limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985); *Kennedy*

---

2. We recognize, of course, that under the terms of the decree appellant would temporarily reimburse the county of Isanti the sum of $266 on behalf of the parties' minor child. However, child support would commence at the $506.25 level when respondent's minor child was no longer receiving AFDC. Respondent's child was eighteen on May 4, 1987.

3. Under the equal treatment method, the court would use the guidelines to determine the amount of support due for all of obligor's children and divide that amount by the total number of children to discern the amount due each child. The support order is then derived by multiplying the per child amount by the number of children in the pending proceeding.

*v. Kennedy,* 403 N.W.2d 892, 897 (Minn.Ct. App.1987). In this case, we find that the trial court did not abuse its discretion and affirm its custody determination. The trial court found that respondent was the primary parent of the minor child. This finding has ample support in the record. Further, the trial court addressed the specific factors set forth in Minn.Stat. § 518.17 (1986). Finally, a custody study conducted by Isanti County Family Services resulted in a recommendation that there be joint legal custody of the parties' minor child and physical custody be granted to respondent.

■ Appellant next argues that granting physical custody of the minor child to respondent resulted in a split custody arrangement in the family and that this was an abuse of discretion. However, we cannot agree that a split custody resulted from the trial court's ruling. Appellant's four children of his prior marriage bore a different relationship to respondent than did the parties' minor child. As noted below, respondent lacked standing to seek custody of appellant's four minor children. In regard to the minor child of the marriage, the parties each had equal standing to seek custody. Therefore, when the court granted custody of appellant's four minor children to him, he was, in reality, the only petitioner for that custody. By contrast, the trial court was required, in the case of the parties' minor child, to determine which of two capable petitioners would be the more appropriate physical custodian.

Finally, even if we reviewed this case as one involving split custody, we would still affirm the trial court's decision as within its broad discretion. Granted, we will closely scrutinize the choice to split custody. However, here the trial court followed the recommendations of the custody study prepared for it. This study carefully considered numerous factors relating to the placement of all the children, and looked at areas such as the children's hygiene, nutrition, emotional health, and living conditions. Though the study concluded that there were several problem areas, it recommended that the custody of appellant's four

minor children of his previous marriage remain in his custody.

■ In turn, respondent argues that she should have been granted custody of appellant's four children from his previous marriage. However, a child custody proceeding is commenced by a person other than a parent by the filing of a petition or motion seeking custody of the child and by giving written notice of the proceeding to the child's parent. Minn.Stat. § 518.156 (1986). Respondent agrees that no notice was given to the children's natural mother. Therefore, the court did not have jurisdiction over these children and it was proper to permit them to remain in their father's custody.

### III.

Appellant challenges the trial court's division of the property. He states that he was "awarded virtually nothing but ordered to pay all the debts of the parties." Trial courts are accorded broad discretion in the valuation and distribution of marital assets. *Ronnkvist v. Ronnkvist,* 331 N.W.2d 764, 766 (Minn.1983). Where the trial court's decision on valuation and division are supported by evidence in the record, they will not be disturbed. *Id.* However, "[a] trial court's division of marital property need not be mathematically equal [but] the court must make a just and equitable division of the marital property of the parties." *Johns v. Johns,* 354 N.W.2d 564, 566 (Minn.Ct.App.1984) (citing *Ruzic v. Ruzic,* 281 N.W.2d 502 (Minn. 1979)); Minn.Stat. § 518.58 (1982).

■ The trial court's decision to award respondent most of the farm equipment as nonmarital property is based on a finding that this property was purchased with money that respondent received through gift or inheritance. This finding is supported by the testimony of respondent who testified that she received approximately $30,000 dollars in cash through inheritance and this money was used to purchase "farm machinery and truck that [appellant] is driving and put crops in * * *." This testimony was also supported by documentary evi-

dence. Therefore, the court properly treated these items as nonmarital assets.

■ Appellant also argues that certain items, described as "the washer, freezer, etc.," were nonmarital assets to which he was entitled. Appellant apparently is referring to finding XIX which states:

> That [appellant] owned a Johnson outboard motor, sets of encyclopedias, various firearms, freezer, washer, refrigerator, desk and tent trailer prior to the marriage to [respondent].

In conclusion VII, the court ordered appellant to return to respondent several items including a Sears washer, Sears dryer, and Sears chest freezer. Appellant seems to be objecting only to the court's order directing him to give to respondent these items that the court found he owned prior to the marriage.

"A trial court's distribution of *marital* property may be entitled to great deference, but its discretion is limited once property has been defined as nonmarital." *Graeber v. Graeber*, 392 N.W.2d 589, 590 (Minn.Ct.App.1986) (citing *Rohling v. Rohling*, 379 N.W.2d 519, 522 (Minn.1986)) (emphasis in original). Minn.Stat. § 518.58 (1986) requires that there be a finding of unfair hardship before the court can "invade" nonmarital property. *See Graeber*, 392 N.W.2d at 590. Here, appellant correctly points out there has been no such finding with regard to these assets. Therefore, the trial court erred when it awarded the above items to respondent. On remand, the trial court shall award to appellant those assets which the court found to be his nonmarital property.

### IV.

■ Appellant's next challenge is to the district court's order granting respondent $100.00 per month in rehabilitative maintenance. Trial court decisions setting or modifying a maintenance award must be affirmed if the court has not abused its wide discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). However, "[t]he period over which maintenance is awarded must bear a reasonable relationship to its underlying basis—to augment the income of the spouse seeking maintenance in order to meet her reasonable financial needs." *Fink v. Fink*, 366 N.W.2d 340, 342–43 (Minn.Ct.App.1985). Here the pertinent trial court findings regarding maintenance were as follows:

> A. * * * The award of marital property to [respondent] is not sufficient to provide for the reasonable needs of the [respondent] during the period of her education.
>
> B. * * * [Respondent] has not had the opportunity to become established in an employment which will provide her with sufficient income to be self-supporting.
>
> *   *   *   *   *   *
>
> D. That [respondent] plans to complete a two (2) year program at Anoka–Ramsey Community College and receive a degree as a certified occupational therapist assistant. Completion of this program would allow [respondent] to become self-supporting.
>
> E. That [respondent] at the present time does not have employment skills that allow her to find employment to become self-sufficient.

Based upon these findings, the trial court concluded:

> That such maintenance shall continue while [respondent's daughter] and [the parties' minor child] reside in [respondent's] household. When [respondent's daughter] leaves the household, becomes emancipated, or is no longer a dependent for AFDC purposes, whichever contingency occurs first, maintenance shall be reduced to $50.00 per month * * *.

The length of this award bears no relationship to its underlying purpose. The court granted respondent maintenance in consideration of her needs while she returned to school. According to the court's own finding, it would take two years for respondent to complete her education. Therefore, there was no basis to make the maintenance obligation open-ended. While the court acted within its discretion in ordering appellant to pay maintenance to respondent, its order was inconsistent with the facts as it found them to be. Therefore,

we reverse and remand the rehabilitative maintenance award for determination by the trial court of an appropriate duration of that award.

## V.

■ Respondent alleges that the trial court erred in refusing to grant her attorney fees in the amount of $3,114.00. "An award of attorney fees rests almost entirely within the trial court's discretion, and 'a reviewing court will rarely reverse a trial court on that issue.' *Rosenberg v. Rosenberg*, 379 N.W.2d 580 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Feb. 19, 1986)." *Ziemer v. Ziemer*, 386 N.W.2d 348, 351 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. July 16, 1986). We find no abuse of the trial court's discretion on this issue. The trial court gave respondent possession of all of the farming equipment purchased by the couple. It also ordered appellant to pay the debts incurred during the parties' marriage. Further, the court awarded respondent the cash value of the couple's life insurance policy ($576.00) to be paid towards her attorney fees. Finally, appellant's obligations to his children and his monthly living expenses were more than his monthly income. Under such circumstances, it cannot be said that the court abused its discretion in refusing to award respondent attorney fees.

## VI.

■ In an amicus curiae brief filed by Isanti county, the county argues that the trial court erred in ordering appellant to reimburse the county in the amount of $266.00 per month. The county argues that appellant should have to reimburse the county in the amount of $434.00 per month, the amount the county expends on one child receiving AFDC.

"Reimbursement is not governed by the child support guidelines, but by two separate standards: 1) the parent's ability to pay; and 2) 'the amount of assistance furnished' to and for the benefit of the child. Minn.Stat. § 256.87, subd. 1 (1984)." *Hennepin County v. Geshick*, 387 N.W.2d 439, 441 (Minn.Ct.App.1986). Here, the court found that one-half of the amount of public assistance received by respondent went to care for her daughter from a previous marriage and one-half went to the minor child of the parties. We believe that this decision was within the court's discretion.

The county's total payment to respondent is $532.00 per month. However, because respondent receives AFDC for her daughter from a previous marriage, she would be getting $434.00 per month even if the minor child of the parties was not living with her. Thus the county only expends an additional $98.00 per month on this child's behalf. If we were inclined to reverse the court's decision on this issue at all, we would call for a reduction in the amount that appellant was ordered to pay to the county as reimbursement.

## DECISION

We affirm the trial court's determination regarding custody of the parties' minor child. We also affirm the court's division of the property except for that property which the court specifically found to be appellant's nonmarital property. We also affirm the court's denial of respondent's request for attorney fees. The order commanding appellant to reimburse Isanti county in the amount of $266.00 per month is also affirmed. However, we reverse the trial court's award of child support and instruct the court, on remand, to take into consideration the needs of appellant's four children from his previous marriage in setting support for the parties' child. We also reverse the court's award of permanent spousal maintenance and remand for trial court determination of an appropriate duration of maintenance.

Affirmed in part, reversed in part and remanded.