**In re the Marriage of Gayle A. RUTTEN, Respondent,**

v.

**James W. RUTTEN, Appellant.**

**No. C2-82-1591.**

Supreme Court of Minnesota.

April 13, 1984.

Francis J. Rheinberger, Stillwater, for appellant.

Lyle J. Eckberg, James I. Moberg, Stillwater, for respondent.

WAHL, Justice.

This appeal arises from a dissolution proceeding in Washington County District Court. James Rutten, respondent below, challenges the trial court's award of nonmarital property, the amount of child support and other expenses he is ordered to pay, and the restrictions placed on visitation. Because we do not find the decision of the trial court on any issue to be clearly erroneous, we affirm.

Gayle Rutten and James Rutten had been married 10 years at the time the marriage was dissolved. They had two children, five and six years of age. James, 36, had been an officer with the St. Paul Police Department for 10 years, earning $914 every 2 weeks, with take-home pay of at least $1,400 per month. He had a bachelor's degree from the College of St. Thomas and a vocational degree in communications from the St. Paul Technical Vocational Institute. He had repaired electronic equipment at home but had discontinued doing so by the time the dissolution action was commenced. He had also received in the past $100 per month as secretary of the police band and might in the future again receive some compensation for his services.

Gayle, 32, was a high school graduate with secretarial skills which she had not used since the first child was born 6 years before. For 2½ years she had operated a licensed day care center in her home. Her average monthly income from that source was between $225 and $275. The center was licensed for five children, including her own two children part-time.

The couple possessed modest marital assets. They owned their homestead, valued at $69,900 with a net value of $54,764 after the mortgage balance was subtracted. They owned household goods and furnishings valued at $2,500, as well as other personal property including electronic equipment, camera equipment, radio station transmitting equipment, scuba equipment, a boat and trailer, a camper trailer, and a duck trap. A semi-portable swimming pool was included as personal property by the court but was a part of the assessed valuation of the house. They also owned a 1980 Ford station wagon, which was encumbered, and a 1976 Plymouth Arrow, which was not. They owed $4,564 on the station wagon, $14,791 on their home mortgage, and approximately $950 on charge accounts.

James had a pension with the St. Paul Police Department into which he paid $79 every 2 weeks, or about $2,000 per year. He had hospitalization and medical insurance available to him through his employment and some life insurance coverage. In addition, he had recently inherited a one-third interest in certain Carver County real estate, an interest valued at $95,000.

The trial court made a specific finding that

> petitioner's resources, including the portion of petitioner's marital property are inadequate so as to work an unfair hardship on the petitioner; also in view of the difference in income between the parties, the pension accumulation of the respondent, the length of marriage of the parties, the lack of vocational skills of petitioner and her employability, and the fact that petitioner's opportunity for future acquisition of capital assets is very much less than the respondent, the respondent's non-marital property should be considered in the division of the property of the parties hereto.

The court awarded custody of the children to Gayle, with reasonable visitation on the part of James, including one full afternoon a week and every other weekend from noon to 8 p.m. on Saturday or Sunday. There were to be no overnight visits, however, until such time as James "changes his lifestyle." The court ordered James to pay $500 per month child support. James was also to maintain health insurance for Gayle and the children through his employment, with Gayle to pay any additional costs related to her own insurance.

The parties were to own the homestead as tenants in common, each paying half of the mortgage payments, taxes, insurance and maintenance. Gayle was given the right of occupancy. Gayle received half the net value of the homestead, $27,382; household goods and furnishings, $2,500; the Ford station wagon, with $250 equity and monthly payments of $204; and a water bed valued by James at $800, for marital property totaling approximately $30,932 in value.

James received half the net value of the homestead, $27,382; the camper, $2,300; boat, motor and trailer, $1,500; the Plymouth Arrow, $2,300; electronic equipment, $935; camera equipment and radio equipment, which James valued at $200 and $400 respectively; scuba equipment, $175; bank account, $100; and all rights and interest in his pension. James received marital property, exclusive of his pension, totaling approximately $37,292 in value. Though James' pension had no present value, he was paying approximately $2,000 per year into the pension fund and had been paying into that fund for 10 years from marital funds. He will receive 40% of top patrolman's salary after 20 years, 50% after 25 years.

Gayle was ordered to pay the $4,565 encumbrance on the station wagon. James was ordered to pay his student loan of $550

and credit card bills and attorney fees for a total of approximately $2,262.

The trial court awarded no spousal maintenance, though Gayle had requested it. Instead, and in light of its finding of unfair hardship, the court awarded Gayle 25% of James' interest in the inherited real estate, an award of approximately $24,000 in value. This appeal followed.

■ It is well settled in cases involving the dissolution of marriages that the trial court is accorded broad discretion with respect to the division of property, allowance of alimony or maintenance, and provision for the custody and support of the children of the parties. *Faus v. Faus*, 319 N.W.2d 408, 412 (Minn.1982); *Bollenbach v. Bollenbach*, 285 Minn. 418, 426, 175 N.W.2d 148, 154 (1970). There must be a clearly erroneous conclusion that is against logic and the facts on record before this court will find that the trial court abused its discretion. *Holmes v. Holmes*, 255 Minn. 270, 274, 96 N.W.2d 547, 551 (1959). In this case, then, we will uphold the determinations of the trial court unless they are clearly erroneous.

1. The first issue raised is that there was no legal basis for an award of nonmarital property in addition to the division of marital property made by the trial court. Minnesota Statutes § 518.58 (1982) provides that:

> [i]f the court finds that either spouse's resources or property, including his [or her] portion of the marital property as defined in section 518.54, subdivision 5 are so inadequate as to work an unfair hardship, considering all relevant circumstances, the court may, in addition to the marital property, apportion up to one-half of the property otherwise excluded under section 518.54, subdivision 5, clauses (a) to (d) to prevent the unfair hardship. * * *

The trial court considered Gayle Rutten's resources, including her share of the marital property, the difference in income between the parties, James' pension accumulation, the length of the marriage, the lack of Gayle's vocational skills and her employ-

ability and the fact that her opportunity to acquire capital assets is much less than that of James. In light of all these facts, the court made a specific finding that Gayle's resources were so inadequate as to work an unfair hardship and, pursuant to section 518.58, awarded her a one-fourth interest in James' interest in the inherited real estate.

There is no argument on appeal that the inheritance is not nonmarital property that devolved to James pursuant to Minn.Stat. § 524.3–101 (1982). Rather, the argument is that the trial court's finding of unfair hardship is without support in the record. We cannot agree. As Gayle Rutten rightly points out, except for the fact that she received none of her husband's pension, no maintenance, though she requested it, and a much smaller portion of her husband's nonmarital property, this case is similar to *Faus*. There, we held that, where the husband received rental property valued at $70,000, subject to an $8,500 encumbrance, and one-half the value of his pension plan, the trial court did not abuse its discretion in awarding the $65,000 homestead to the wife, even though a substantial portion of the appreciated value of the homestead was attributable to the husband's nonmarital contribution. Nancy Faus was an unskilled 47-year-old woman with one minor child at home. She received maintenance of $350 per month, half the current value of John Faus' pension plan and the homestead. She had monthly expenses of $1,200 and monthly take-home pay of $495 per month as a hotel desk clerk. John Faus' monthly take-home wages were $1,376.

■ In the case before us, there is also an insubstantial amount of marital property and a relatively substantial amount of nonmarital property owned by the husband. Although Gayle Rutten was 15 years younger than Nancy Faus, which is a real advantage if she can receive additional training or education to upgrade her earning capacity, she received no part of the marital income contributed for 10 years to James' pension plan, nor did she receive

any maintenance to tide her over the severe economic dislocation occasioned by the divorce. She had two young children at home, only one of whom was in school full-time. Her cash income per month after the divorce, if the child support were paid in full and on time, was at a minimum $725. From this she had to pay $204 for the car and $96.07 for the mortgage, leaving a minimum of $400 for all other normal expenses, including maintenance and insurance on the house. James had take-home pay of $1,400 per month, with at least $700 per month left after paying child support and half the mortgage payment. He also had nonmarital property valued at approximately $72,000 and the capability of establishing an electronics repair business on the side if he chose to do so. The record supports the trial court's finding of unfair hardship. Furthermore, the trial court could properly consider the request for maintenance as a factor in the property division. *Ruzic v. Ruzic,* 281 N.W.2d 502, 505 (Minn.1979). *See also, Bogen v. Bogen,* 261 N.W.2d 606 (Minn.1977) ($20,000 cash settlement in lieu of alimony valid). We find no abuse of discretion in the award of nonmarital property in this case.

■ 2. The trial court ordered James Rutten to pay $500 per month child support, one-half of the mortgage payments, real estate taxes, insurance and maintenance on the house, approximately $950 in bills on charge accounts and $750 toward Gayle's attorney fees. James argues that this order is unreasonable based on his ability to pay. This court will not reverse the trial court's decision on child support and miscellaneous expenses unless that decision was clearly erroneous. *Bollenbach,* 285 Minn. 418, 175 N.W.2d 148. We cannot say that the trial court did not properly consider all of the factors set out in Minn. Stat. § 518.17, subd. 4 (1982) in determining the obligation and amount of child support. Given the relative incomes of the parties as set out above and other facts relative to the production of income, the trial court could conclude that James was in a better position to provide monetary support for the children and that $500 per month was a reasonable amount. As for James' responsibility for half the house expenses, he does retain a half-interest in the house. The miscellaneous expenses he must pay are nonrecurring expenditures on charge accounts. The trial court could reasonably find that he was in a better position than Gayle to pay those expenses. The amount to be allowed as attorney fees rests almost entirely within the discretion of the trial court. Minn.Stat. § 518.14. We affirm the trial court's order for child support, miscellaneous expenses and attorney fees.

■ 3. The trial court ordered reasonable visitation of the children with their father to include one full afternoon a week and every other weekend from 12 noon to 8 p.m. on Saturday or Sunday. No overnight visitation was to be permitted for the time being. James Rutten argues that this restriction unreasonably limits his ability to maintain a parent-child relationship that is in the best interest of the children. The focus in granting visitation rights is primarily the best interests of the children. Minn.Stat. § 518.175, subd. 1 (1982). The trial court has broad discretion to determine what these best interests involve in the area of visitation. *Manthei v. Manthei,* 268 N.W.2d 45 (Minn.1978). The trial court in this case was in a far better position than is this court to establish a visitation schedule for children 5 and 6 years old. The court could properly have referred the matter to Court Services to the end that the noncustodial parent could at least occasionally have arranged overnight visitation. Any parent knows that bedtime is a most precious part of childhood and parenting. We cannot say, however, that the visitation ordered amounted to an abuse of discretion. In any event, the trial court indicated that a change of circumstances could lead to modification of the order. The judgment of Washington County District Court is affirmed.

Affirmed.