In re the Marriage of Peter George **HUSTON, petitioner, Respondent,**

v.

Joan Angeline **HUSTON, Appellant.**

No. CX–87–546.

Court of Appeals of Minnesota.

Sept. 22, 1987.

Kenneth C. Barghini, St. Paul, for respondent.

Lauren K. Maker, Minneapolis, for appellant.

Considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER, FOLEY, WOZNIAK, SEDGWICK, LANSING, HUSPENI, FORSBERG, LESLIE,

NIERENGARTEN, RANDALL, CRIPPEN, NORTON, MULALLY* and LOMMEN*, JJ.

## OPINION

PARKER, Judge.

This is the third post-decree support modification of a March 10, 1978, dissolution decree. In 1981, the last modification, the trial court granted respondent Peter Huston's request for a decrease in support because his earnings decreased when he went on strike. The current motion was brought by appellant Joan Huston, based on her receipt of public assistance, respondent's increased earnings, and increased needs of appellant and the children. The trial court found a substantial change of circumstances which rendered the terms of the most recent modification unreasonable and unfair. The trial court increased child support, but departed downward from the child support guidelines, finding that a guidelines support order would work a great financial hardship on Peter Huston and his current family. The trial court denied Joan Huston's post-hearing motion for amended findings, and she appeals from the trial court's order modifying child support. We reverse and remand for consideration consistent with this opinion.

## FACTS

The parties' marriage was dissolved March 10, 1978. The court granted Joan Huston custody of the parties' three minor children and ordered Peter Huston to pay $330 per month child support. In 1979, when Peter Huston went on strike, the trial court granted his motion to reduce support to $200 monthly. On January 28, 1981, the court increased support to $300 when Peter Huston returned to work.

Peter Huston remarried after the dissolution, and his current spouse has custody of one child from a prior marriage. She receives no child support. Her niece lives with the couple.

Joan Huston was a homemaker throughout the marriage and has no post-high

---

* Acting as judges of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

school education. She was not employed outside the home during the parties' marriage. After the dissolution she remarried, but divorced approximately a year ago. She was unemployed at the time of her second dissolution and received public assistance. The court increased child support from $300 to $500 per month, a downward departure from what it believed to be the guidelines amount of $801.50.

The trial court made findings comparing Joan and Peter Huston's incomes and expenses when support was last modified to their current incomes and expenses. The court found Peter Huston's total net monthly income to be $2,290, inclusive of his National Guard pay, bonuses and his current spouse's net monthly income of $600. The court found his new family's reasonable monthly expenses to be $1,907.

The court found Joan Huston was unemployed, receiving $130 per month in food stamps and a $391 AFDC grant. It found her and the children's monthly expenses to be $1,595. The court found one of the children needed $70 per month for special education and ordered that the children's future orthodontist expenses, 20 percent of which would not be covered by medical insurance, be divided equally between the parties.

Departing downward from what the trial court believed to be the child support guidelines amount of $801.50, the court found "that to order guidelines child support in this situation would create an extreme financial hardship for [respondent] and his current family."

The court based its increase in child support on Joan Huston's receipt of public assistance, a 34 percent increase in the Federal Bureau of Labor Statistics since the last modification, and a substantial increase in Peter Huston's income. The trial court denied Joan Huston's post-hearing motion for amended findings. In its post-hearing memorandum, the court stated:

In the earlier Order, this Court found that [Peter Huston] had a net monthly income in the amount of $2,290. Said amount was comprised of $1,533 in net monthly pay from his employment; $114

per month in net pay from National Guard duty; $43 per month as his 1986 year-end bonus; and $600 net income earned by the [Peter Huston's] present spouse. (It should be noted that recent legislative changes prohibit the inclusion of the income of a party's current spouse in determining the propriety of a motion for modification of a child support and/or spousal maintenance order pursuant to Minn.Stat. § 518.64, subd. 2). Additionally, [Peter Huston] and his current family were found to have reasonable living expenses in the approximate amount of $1,907.00 per month.

Correspondingly, [Joan Huston] receives AFDC benefits in the amount of $391 per month. Additionally, this Court is now informed that [Joan Huston] earns net income of approximately $380 per month through her employment with Burger King. Finally, as ordered by this Court, [Joan Huston] is to receive $500 per month in child support. payments from [Peter Huston]. Therefore, [Joan Huston] has approximately $1270 per month in disposable income. As set forth in this Court's Order of December 22, 1986, and as reaffirmed at the hearing on this Motion, [Joan Huston] and the three minor children claim reasonable living expenses of approximately $1595 per month.

Also, as referenced in the December 22, 1986 Order, and as reiterated herein, [Joan Huston] is responsible for one-half (½) of any uninsured medical care expenses incurred by the parties' three minor children. * * *

In this Court's estimation, the $500 in child support ordered by this Court is a reasonable compromise when balanced against and factored into the relative financial positions of the parties.

## ISSUES

1. Did the trial court err by departing downward from the child support guidelines based on the hardship to respondent and his new family?

2. Is appellant entitled to attorney's fees for the motion or for this appeal?

## DISCUSSION

### I

The trial court has broad discretion with respect to the support of children. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). We will not reverse a trial court's decision unless that decision is clearly erroneous. *Id.* at 51. If the determination has an acceptable and reasonable basis in fact, it must be affirmed. *DuBois v. DuBois*, 335 N.W.2d 503, 507 (Minn.1983).

Joan Huston first argues that the trial court erred by departing downward from the guidelines without stating specific reasons for the departure. Minn.Stat. § 518.-551, subd. 5(e), states:

The above guidelines are binding in each case unless the court makes express findings of fact as to the reason for the departure below the guidelines in that case in which the court orders support that so deviates from the guidelines.

Courts are prohibited from ordering support below the guidelines unless the court makes specific findings on the reason for the lower order. *Moylan v. Moylan*, 384 N.W.2d 859, 863 (Minn.1986); *LeTourneau v. LeTourneau*, 350 N.W.2d 476, 478 (Minn.Ct.App.1984).

Joan Huston does not contest the adequacy of the findings for purposes of the actual modification. She argues that the court's findings do not support the trial court's downward departure from the guidelines.

The trial court erroneously added Peter Huston's current spouse's net income to arrive at Peter Huston's net income. Under Minn.Stat. § 518.551, subd. 5(a) (1986), "net income" does not include the income of the obligor's new spouse. Therefore, Peter Huston's monthly net income is $1,690, exclusive of his new spouse's income. The guidelines child support is $592, not $801.50. The trial court also considered the expenses of Peter Huston's entire family, including his current spouse's child from her previous marriage and her niece. Peter Huston's current spouse receives no support for her child; testimony indicates that she receives some financial support for her niece. When determining the parents' financial needs, a trial court may not consider expenses attributable to new spouses. Here the court must factor out Peter Huston's expenses from those of his new family. *Lenz v. Wergin*, 408 N.W.2d 873, 877 (Minn.Ct.App.1987). Likewise, the court may not consider expenses attributable to Peter Huston's current spouse's child by a prior marriage or those of her niece. However, the court may consider these expenses as one factor among several in setting child support. *Scearcy v. Mercado*, 410 N.W.2d 43 (Minn.Ct.App. 1987). Moreover, the court erred by comparing the relative financial positions of Joan and Peter Huston in setting support. This is an inappropriate factor to take into consideration when determining child support.

The trial court's erroneous assumption that Joan Huston would continue to receive AFDC after it modified child support gave rise to an inflated income figure. Her monthly income now totals $880—$380 from her employment and $500 in child support. Because the trial court's child support exceeded the amount of Joan Huston's AFDC grant, she was rendered ineligible for AFDC. *See* Minn.Stat. § 518.551, subd. 1 (1986). Sometime after the hearing, the welfare department notified her that it was terminating her AFDC grant.

Joan Huston claims she suffers from a number of ailments which make it difficult for her to work full-time, including a pinched nerve, carpal tunnel syndrome and mitral valve prolapse. She indicates that her present job income could change. If it does or if her health restricts her ability to work, she could properly move to modify child support.

Peter Huston's affidavit shows he is currently making $1,050.97 mortgage payments on his new home. However, obligations assumed as a result of a second marriage do not relieve the obligor of his duty to his first wife and children, although extenuating circumstances may be considered. *Wildtraut v. Wildtraut*, 391 N.W.2d 550, 551 (Minn.Ct.App.1986).

Joan Huston argues that the trial court erred by failing to consider Peter Huston's overtime pay in calculating his net income. *Justis v. Justis*, 384 N.W.2d 885, 890–91 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 29, 1986). We hold the court's finding of his net income was not an abuse of discretion. *Cf. Rutten*, 347 N.W.2d at 50; *DuBois*, 335 N.W.2d at 507.

## II

■ Joan Huston argues that her income is insufficient to pay her attorney's fees. She did not qualify for legal assistance. Minn.Stat. § 518.14 (1986) states:

In a proceeding brought * * * under this chapter, the court, from time to time, after considering the financial resources of both parties, may require one party to pay a reasonable amount necessary to enable the other spouse to carry on or to contest the proceeding, and to pay attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement or after entry of judgment.

The court is to consider the financial needs of both parties when determining the issue of attorney's fees. *Kennedy v. Kennedy*, 376 N.W.2d 702, 705 (Minn.Ct.App.1985). We hold that the court abused its discretion by refusing to award Joan Huston attorney's fees for bringing the motion.

Moreover, we hold that she is entitled to $400 attorney's fees for this appeal. Minn. Stat. § 518.14 (1986).

## DECISION

The trial court erred by departing downward from the child support guidelines based on its finding that the guidelines amount would work a hardship on respondent and his new family. The trial court abused its discretion by failing to award appellant attorney's fees, and we award her $400 attorney fees for this appeal.

Reversed and remanded for consideration consistent with this opinion.

CRIPPEN, Judge, concurring specially.

I would also reverse the trial court's decision on support and attorney fees, and remand the case for the trial court's reconsideration of these issues.

We could affirm the trial court's child support decision if it were not for its mistaken observation on one fact.

In assessing the resources of appellant and the children, the court evidently assumed that appellant would receive monthly public assistance of $391. The record indicates that appellant will receive no further public assistance, due to either her earnings or the $200 increase in monthly child support.

The trial court found that appellant and the children have "needs" of $1595 per month. A $500 support award, plus $380 earnings and $391 public assistance, would cover $1271 of these needs. Without the public assistance, however, only $880 per month is available to meet the needs of the children and their mother.

The trial court correctly endeavored to set a fair support award with deference to the circumstances of both parents and the children. Respondent's ability to pay is evidently limited, with or without reference to the income and expenses attributable to his spouse. Facing the actual circumstances of both parties and the children, the court should reassess the fairness of its award.

RANDALL, Judge, dissenting.

I respectfully dissent and would affirm the trial court, both as to child support and attorney fees.

*Child support modification*

Respondent was paying $300 a month child support and, upon a post decree support modification hearing, the trial court increased child support from $300 to $500 per month. Respondent's net monthly income, as found by the trial court, and to which the majority agrees, is $1690. Strict guidelines support applied to that figure would result in child support of $591.50 a month. Thus, before this court on review is the question whether or not the trial

court abused its discretion and should be reversed as a matter of law because the increase respondent is required to pay was $200 a month more, but not $291.50.

Initially the trial court applied the guidelines to a combination of respondent's monthly net income of $1690 and his second spouse's monthly net income of $600, and presumed that on a total net take home pay of $2290 a month, the guidelines, if strictly applied, would call for child support of $801 per month. As respondent correctly points out, and as the majority opinion and this dissent agree on, the correct figure to start with is the $1690 that obligor alone takes home.

Respondent claimed approximately $2500 a month in necessary living expenses and argued vigorously that, between his take home pay and that of his second spouse, they were just barely making it, based on the $300 per month child support which he was paying regularly. The trial court cut his claimed necessary monthly expenses sharply from $2500 down to $1900, accepted appellant's contention that she was entitled to more money, and ordered an increase in child support from $300 to $500 a month. Since we must start from the proposition that guidelines support is only applied to obligor's net take home pay ($1690 a month), it becomes clear that, between what the court found to be his necessary monthly living expenses and the new figure of $500 a month, his total monthly out-go now for living and child support is approximately $2400 a month. Those figures, by definition, show over 100 percent of respondent and his second spouse's total net monthly take home will be consumed by necessary living expenses and court ordered child support.

It is impossible for this writer to find that the trial court, acting in good faith and doing the best it could with what money was available, was erroneous in only imposing on respondent an additional $200 a month, and not $291.50. Countless supreme court and court of appeals cases have cited the basic proposition that a trial court's determination on appropriate child support matters will not be reversed absent a showing of a clear abuse of discretion. The majority acknowledges the correctness of this fundamental proposition of family law.

The majority points out that the trial court did not provide a complete breakdown between respondent's own personal monthly living expenses and those pertaining to his second family. With the limited amount of money available to respondent, I cannot find that this makes a difference sufficient to justify a reversal and a remand. Even if we assume that the $1900 a month that the trial court allowed to respondent as necessary monthly living expenses included items for his second family, and that his personal share of that $1900 was hundreds of dollars a month less,[1] the fact still remains that the $500 a month child support he is now ordered to pay, coupled with just his home mortgage payment of $1051.06 and his monthly car payment of $185.67 (excluding all consideration for respondent's necessary outlays for his own food, clothing, car expenses, insurance, medical, and other personal expenses) exceed what he takes home! It is just as likely on remand that the trial court might examine the present level of $500 and find that an equitable figure for child support is less than the $500 a month appellant was granted.

It is not in dispute that the first family of an obligor is primary, when there is more than one, and it is not in dispute that dependents by a second marriage are not factored into the child support guidelines.

1. The trial court examined respondent's evidence where respondent claimed $2500 a month necessary living expenses. The trial court slashed that figure approximately 25 percent down to $1900. Assume that we find the trial court erred in this finding of fact (I see no basis in the record to find such error) and, arguendo, slash respondent's necessary monthly living expenses another 25 percent down to $1250, or only half of what he claims. That $1250, plus the court ordered child support of $500, comes to $1750, which is still more than respondent takes home. It is difficult to find that either law or equity contemplates sending this case on these facts back to the trial court for the possibility that the trial court will increase respondent's obligation from about 105 percent of what he has available to a figure even higher.

But it is also the law that a trial court can recognize the necessary and reasonable expenses that an obligor incurs by reason of a second family as one factor among several in determining the income an obligor has available when trying to determine an equitable amount for child support. *Erickson v. Erickson*, 385 N.W.2d 301, 304 (Minn.1986); *Scearcy v. Mercado*, 410 N.W.2d 43 (Minn.Ct.App.1987).

Here the trial court had before it all the evidence pertaining to what obligor made, appellant's claimed monthly expenses, obligor's claimed monthly expenses, and required a substantial increase from $300 to $500 a month in respondent's child support. It is true, as the concurrence points out, that the trial court incorrectly felt that appellant would continue to receive both the new amount of court ordered support, plus her prior AFDC grant. However, on remand, elimination from appellant's income of the prior AFDC grant will do nothing to change the amount of money respondent has available to pay support, which, as this dissent points out, is now set at a figure which, for all practical purposes, will require respondent to use his second spouse's earnings to stay current.

When the record reflects that the trial court has before it all the evidence the parties choose to present and the trial court makes a conscientious effort to be fair to both sides, we cannot continue as a court of review to retry cases de novo and reverse and remand when the judge's thinking and reasons approximate, but do not perfectly mirror, our own.

*Attorney fees*

Appellant also argues that the trial court abused its discretion by not requiring respondent to pay her attorney fees in addition to his own. Again, Minnesota law is replete with cases citing the basic proposition that the award of attorney fees in dissolution cases is a matter resting largely within the discretion of the trial court, and not to be reversed unless it is clear abuse of discretion. *Bogen v. Bogen*, 261 N.W.2d 606, 611 (Minn.1977); *Kirby v. Kirby*, 348 N.W.2d 392, 394 (Minn.Ct.App.1984). I find no such abuse.

I dissent and would affirm the trial court on both issues.

POPOVICH, Chief Judge (dissenting).
I join in the dissent of Judge Randall.

WOZNIAK, Judge (dissenting).
I join in the dissent of Judge Randall.

MULALLY, Judge (dissenting).
I join in the dissent of Judge Randall.

NIERENGARTEN, Judge (dissenting).
I concur in the dissent of Judge Randall.