In re the Marriage of Joyce E. CICH, Petitioner, Respondent,

v.

Leon J. CICH, Appellant.

No. C7–88–255.

Court of Appeals of Minnesota.

Aug. 23, 1988.

Dennis Daly, Jr., St. Paul, for petitioner, respondent.

John Trojack, St. Paul, for appellant.

Heard, considered and decided by RANDALL, P.J., and THOREEN and MULALLY, JJ *.

## OPINION

RANDALL, Presiding Judge.

Appellant Leon Cich seeks review of a November 10, 1987, judgment and December 30, 1987, order denying his motion for a new trial. On appeal, appellant claims the trial court abused its discretion in dividing marital property, in awarding respondent $800 in permanent monthly maintenance, and in awarding respondent $4,000 in attorney fees. Respondent filed a notice of review and seeks additional attorney fees for the appeal. We affirm in part and reverse in part.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

Appellant Leon Cich, age 52, and respondent Joyce Cich, age 50, were married 32 years and have four children, all emancipated. During the majority of the marriage, respondent was a traditional homemaker. Respondent was employed over 31 years ago for a few months as a comptroller, over 20 years ago for less than a year as a clerical worker with an insurance company, and over 20 years ago as a clerk typist for nine months. Ten years ago respondent was also employed part time for a few months at several nominal, minimum wage jobs.

Respondent is a high school graduate, is presently unemployed, and in poor physical and mental health. She has a history of neck, back, shoulder, arm, leg, abdominal, psychosomatic and other mental and physical disorders, many relating to several auto accidents she has been in. She has been diagnosed as having a 25 percent permanent partial disability of the spine due to various injuries, and is restricted from sitting for longer than one hour, or standing for over one-half hour. A career counselor testified respondent is a poor prospect to develop a career and that her vocational outlook is poor in light of her age, physical limitations, lack of work experience and inability to follow instructions.

A qualified rehabilitation consultant, produced by appellant, stated that in considering respondent's restrictions she was qualified for various jobs, including a domestic service companion, assembler of small parts, waitress, child monitor, housekeeper, or salesperson and could likely start at a wage from $3.50 to $5.00 per hour with the reasonable probability of earning $7.00 to $7.50 in a couple of years.

Appellant is in good health and has been employed on a part-time basis by the Minnesota Army National Guard and on a full-time basis with the United States Department of the Army. He has a net monthly income of $1,863.72. The court also found appellant receives an additional $100 per month in rental income from his daughter and has reasonable monthly living expenses of $1,837. Respondent has no monthly income, except for her maintenance award. The court found she has monthly expenses of $1,347.63. During the last year of the parties' marriage, net marital income was $27,786, which came solely from appellant's employment.

Since December of 1957 the parties have resided in a home owned by appellant's parents. The parties have paid to appellant's parents rent in amounts ranging from $50 to $135 a month from when they moved in up to the present. Respondent now claims appellant's parents "promised" that the house would eventually be given or sold to them. No contract for sale was ever entered, and no written memorandum of any kind memorializes, or even refers to by implication, respondent's claim.

During the proximate 30 years of residence, the parties made certain interior decorations and improvements to the home, including landscaping, remodeling of the basement, and constructing an addition which consisted of a kitchen, bathroom, and a bedroom. The exhibit submitted by respondent indicated the parties expended at least $4100 for improvements through the years. Respondent claimed there may have been more, but offered no proof. The trial court used the figure of $4,108.43. Some of the money used to make the improvements was borrowed from appellant's parents. Most of the funds were provided out of the parties' marital funds.

Based upon respondent's records and receipts from 1964 to 1985, the parties paid $17,743 to appellant's parents. The trial court found the parties made payments of approximately $26,000 overall toward the rental or purchase of the home. Respondent did not produce receipts of payments made prior to 1964 and after the beginning of 1985, but apparently the trial court considered the likelihood of those payments in calculating the figure of $26,000. Appellant and his mother testified all payments were for rent.

Appellant's parents each have a will, and in the wills the home in question has been left to appellant. The home's present market value is estimated at $55,600, and it is

free and clear of any liens or encumbrances.

The court found the parties had a "leasehold and equitable interest" in appellant's parents' home and that it would be grossly inequitable not to consider the marital contribution invested in the homestead by respondent since it was a "virtual certainty" that appellant would be given the homestead by his parents, either during their lifetime or upon their death. The trial court indicated that failure to award money to respondent, based on appellant's possible future inheritance, would result in an undue burden and hardship on respondent.

In addition to the house in question, the parties own a Wisconsin lake home with a present market value between $54,000 and $69,500, which is free of any encumbrance except $2,000 in unpaid real estate taxes. The parties also own real property in New Mexico valued at approximately $2,000, a 1980 Chevrolet Impala valued at $2,000, a 1978 Mercury Cougar valued at $1,000, and miscellaneous other personal property.

The parties marriage was dissolved by judgment entered November 10, 1987. The trial court awarded appellant, subject to his parents' interest, all "rights and interests" in his parent's home. The court directed the Wisconsin lake home be sold with the net proceeds to be divided equally between the parties. However, the trial court then went on to order that out of appellant's half of the Wisconsin lake home proceeds, an additional $20,000 be deducted from the sale and awarded to respondent. The trial court premised this award of an additional $20,000 to respondent out of appellant's half of the Wisconsin lake home solely on the basis of the likelihood that appellant would inherit it from his parents.

Pursuant to the parties' stipulation (not in issue), the New Mexico property was to be sold with the net proceeds to be divided equally between the parties, and respondent was awarded one-half of appellant's civil service system retirement benefits and military service retirement benefits which accrued during the marriage. Each party was awarded the personal property in their possession. Respondent was awarded the 1980 Chevrolet, while appellant received the 1978 Mercury.

Respondent was awarded permanent spousal maintenance of $800 per month, until the death of either party, remarriage of respondent, or further order of the court. The court did reserve judgment on what spousal maintenance obligation, if any, appellant would have upon his retirement and respondent's commencement of receiving retirement benefits. Appellant was also ordered to pay $4,000 of the $9,000 in attorney fees incurred by respondent. Leon Cich appeals.

## ISSUES

1. Did the trial court err in dividing marital property based on the possibility that one party would receive a future inheritance?

2. Did the trial court abuse its discretion in awarding respondent $800 in monthly permanent spousal maintenance?

3. Did the trial court abuse its discretion in awarding respondent $4,000 in attorney fees and is respondent entitled to additional fees on appeal?

## ANALYSIS

### I.

*Marital property*

▮▮▮ Appellant claims the trial court committed clear error in dividing marital property based on the possibility of his future inheritance. We agree. A trial court has broad discretion in dividing marital property and will not be reversed unless there has been a clear abuse of discretion. *Servin v. Servin*, 345 N.W.2d 754, 758 (Minn.1984). Before finding an abuse of discretion this court must conclude there was a "clearly erroneous conclusion that is against logic and the facts on record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). In dividing marital property, a trial court has the power to invoke equity for purposes of reaching a just result. *Nelson v. Nelson*, 400 N.W.2d 763, 765 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Apr. 23, 1987). Although a trial

court has broad discretion in dividing marital property, the property division must be "just and equitable". Minn.Stat. § 518.58, subd. 1 (Supp.1987).

The issue here concerning the property division award is whether the trial court erred in awarding respondent an additional $20,000 out of the marital estate based on the trial court's opinion that appellant would eventually receive real estate from his parents by inheritance, or possibly by gift. The trial court spelled out its basis for the additional $20,000 award to respondent in the following findings:

27. That in December of 1957 the parties moved into what would be their home for nearly the next 32 years, which is [appellant's] present residence located at 1634 East Ivy in the City of St. Paul, which the more credible evidence showed that the parties understood they were purchasing or would eventually receive as a gift from [appellant's] parents.

28. That prior to moving into the homestead at 1634 East Ivy the parties had sold their former home on Frank Street in St. Paul, after having been encouraged to do so, in part by [appellant's] parents.

29. That [appellant's] parents represented to the parties that if they moved into the home at 1634 East Ivy, the home would eventually be sold or given to the parties, however no formal contract for sale was ever entered, nor were any deeds ever exchanged.

30. That during the parties' 32-year marriage, the parties made payment in excess of $26,000.00 towards the rental and/or purchase of their home at 1634 East Ivy, to [appellant's] parents.

31. That throughout the parties' 32-year marriage, the parties made numerous improvements to their homestead located at 1634 East Ivy, which included an addition on to the property which consisted of a kitchen and two bathrooms, an upstairs bedroom, the remodeling of their basement and extensive landscaping. That many of these improvements were paid for out of marital funds, and substantially contributed to an increase in the value of the property. Further,

that both of the parties expended substantial labor which also substantially contributed to an increase in the value of the property. That the more credible evidence indicated that the parties would not have improved the homestead without the expectation that they would own the property in the future and relied upon the promise made by [appellant's] parents.

32. That it is inconsequential to this Court whether the parties used the term rent or payment when they paid their monthly sum to [appellant's] parents for living in the homestead. The parties' understanding of the promise made by [appellant's] parents and their resulting actions in relation to the property weigh more heavily in the Court's consideration of this issue.

33. That the [appellant] has only one sibling, a sister, whom resides with [appellant's] parents at the [appellant's] parents' residence. That [appellant's] parents, who are in their mid 80's have prepared Last Wills and Testaments devising to [appellant's] sister the residence in which [appellant's] sister and parents presently reside, and devising to the [appellant], the parties' former homestead at 1634 East Ivy.

34. That the [respondent] testified that it is her belief that the fair market value of the homestead located at 1634 East Ivy is between $55,000–$65,000.

35. That according to the Ramsey County Taxation and Records Administration, Records Division, [appellant's] present residence at 1634 East Ivy has an estimated market value of $55,600.00. The property is unencumbered. No appraisals were submitted to the Court and this Court accepts the property assessment value as the fair market value of the property.

36. That while this Court clearly recognizes that it has no jurisdiction over [appellant's] parents, this Court finds that it would be grossly inequitable not to consider the marital contribution invested in the parties' homestead by the [respondent] and the virtual certainty that [appellant] will be given the homestead by

his parents either during their lifetime or upon their death. The Court's failure to make this consideration would result in an undue burden and hardship on the [respondent].

Findings of Fact 27–36.

Based on these findings the trial court ordered respondent is entitled to an "Additional Property Settlement" of $20,000, which is to be taken from appellant's share of the Wisconsin lake home. Upon the sale of the lake home the court ordered the net proceeds to be divided equally, except from appellant's "one-half of the net equity proceeds shall be deducted the sum of $20,-000.00 as and for an additional property settlement". Conclusion of Law 4.

■ We find the trial court erred as a matter of law in considering the possibility of appellant eventually receiving his parent's property by inheritance or gift as a basis for awarding respondent $20,000 as an additional property settlement. Although appellant "may" some day inherit or receive his parent's property, it is not a "certainty," or anything close to a certainty. The possibility or probability that it may happen is legally irrelevant. For instance, appellant's parents can change their will at any time they want. As the legal owners of the property, they can sell, mortgage, or otherwise encumber the property without appellant's knowledge or permission. The future estate of the parents, at their death, could be substantially reduced because of liabilities and estate debts not in existence in 1987, but present at the time the parents pass away.

■ Contrary to the trial court's determination, appellant has *no* legal interest in his parents' home because he is mentioned in a will. The general rule is that wills convey nothing while the testator is alive, and intended beneficiaries have no legal interest in the assets mentioned in the will prior to the will taking effect (death of testator). *See* 79 Am.Jur.2d *Wills* § 7 (1975), which states in relevant part:

Essentially, a will is a declaration of the testator's intention as to what shall take place after his death in reference to property left by him. One distinguishing feature of such an instrument is that it has no binding effect during the life of the testator, and is intended to operate only upon and by reason of his death. A will does not confer any present right at the time of its execution. The maker of a testamentary instrument, by its execution, parts with no right and divests himself of no modicum of his estate. Nothing vests by reason of such an instrument during the life of the testator. Until the death of the maker it is ambulary and revocable.

(Citations omitted.)

The trial court clearly erred in finding a legal interest in appellant and respondent arising out of appellant's parents' real estate. To consider the likelihood of a future gift or inheritance from a parent as a basis for awarding additional marital assets to one spouse or the other would severely prejudice persons with independently wealthy parents. People with wealthy parents would become arbitrary and capricious exceptions to the rule that the division of marital assets has to be just and equitable. Minn.Stat. § 518.58, subd. 1. Even if appellant's parents in the future choose to deed this home to appellant, or die testate with their present wills unchanged, there is neither unfairness nor prejudice to respondent. The fact that parents favor children over their children's ex-spouses in distributing property surprises no one.

Respondent's contention that appellant's parents "owe" or "promised" appellant or respondent the property was not before the trial court and is not before this court. The trial court acknowledged in Finding 36 that it had no jurisdiction over appellant's parents. Respondent has not brought suit against appellant's parents for breach of contract, specific performance, failure to deliver real estate, unjust enrichment or any other claim. However, the trial court's findings and award of $20,000, in effect, are the equivalent of finding that such a suit was brought and resolved in respondent's favor.

The trial court also, in part, based the additional $20,000 award to respondent on

her marital contributions invested in the property. The record does not support that respondent's half of the improvements entitle her to an additional property settlement. Evidence submitted by respondent concerning the cost of the improvements to the property reflected expenditures of $4,108.43 over a period of thirty-plus years. That amounts to improvements of about $135 per year, or about $11.50 a month. These modest amounts are nothing more or less than the normal type of improvements that any renter would make to property that they anticipate renting at length.

The trial court also placed an emphasis in granting this additional $20,000 to respondent on the fact that during the marriage, appellant and respondent had made monthly payments to appellant's parents totaling approximately $26,000. We do not see the connection. Spread out over the period that the parties lived in appellant's parents' household, the amount is so modest as to constitute a benefit to appellant and respondent, not a debt owed by the parents to respondent. The $26,000 breaks down to about $900 a year, or $75 per month for rent. In effect, appellant's parents gave both appellant and respondent a generous and substantial cash gift by allowing them to rent a full-size house at below prevailing rates.

What record there is not only does not support respondent's contention that the couple was purchasing the house over the 30 year period, but, in fact, shows that respondent, after cancelled checks were returned to her, deliberately altered the notations on the memo portion of some of the checks to reflect "payment" instead of "rent."

It is not in dispute that the property was and is legally owned by appellant's parents. It is therefore not marital property subject to division under Minn.Stat. § 518.58 (1986). See Minn.Stat. § 518.54, subd. 5 (Supp.1987). The trial court erred in finding appellant and respondent had a legal interest in appellant's parents' property.

Taking into account the additional $20,-000 granted to respondent, respondent received approximately 83 percent of the marital property. This division is not just and equitable.

This is *not* a situation where the trial court was apportioning nonmarital property because of an unfair hardship to respondent. See Minn.Stat. § 518.58, subd. 1. Instead, the trial court attempted to equitably divide an interest in real property belonging to people not to party to this action.

The $20,000 judgment awarded to respondent from appellant's share of the Wisconsin lake home is vacated and that amount returned to appellant.

II.

*Maintenance*

Appellant claims the trial court abused its discretion in awarding respondent $800 in permanent monthly spousal maintenance. The difference between appellant's net income and his reasonable monthly expenses is approximately $140 a month. Appellant asserts the maintenance award should be reduced to $400 per month, and then only for a period of two years.

A trial court's maintenance award will not be reversed unless there has been a clear abuse of discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). Minn.Stat. § 518.552, subd. 2 (1986) sets forth factors to be considered when determining the amount and duration of a maintenance award. No single factor is dispositive and each case must be determined on its own facts. *Erlandson*, 318 N.W.2d at 39. The basic consideration is the financial need of the spouse receiving the maintenance, and the ability to meet that need balanced against the financial condition of the spouse providing that maintenance. *Krick v. Krick*, 349 N.W.2d 350, 352 (Minn. Ct.App.1984).

Based on the record and the factors enumerated in Minn.Stat. § 518.552, subd. 2, this court finds the trial court did not clearly abuse its discretion in awarding respondent permanent maintenance. Respondent was last fully employed over 31 years ago and is in poor physical and men-

tal health. She has been diagnosed as having a 25 percent permanent partial disability of the spine with work restrictions which will severely limit employment opportunities. Respondent has been a traditional homemaker and due to her absence from the job market lacks education, skills and work experience. The record supports the trial court's finding that respondent is unable to provide adequate self-support to meet her needs.

Although the amount of the award, $800, is high in light of appellant's net income and reasonable expenses, we do not find a clear abuse of discretion considering respondent's poor health, limited earning capacity, duration of the marriage, and respondent's necessary monthly expenses. *See generally O'Donnell v. O'Donnell,* 412 N.W.2d 394 (Minn.Ct.App.1987) (affirming $800 permanent maintenance award to wife with $802 in monthly expenses, when husband has net monthly income of $2,279.70 and monthly expenses of $2,205.17).

### III.

*Attorney fees*

 Appellant claims the $4,000 in attorney fees awarded to respondent is arbitrary and capricious. An award of attorney fees pursuant to Minn.Stat. § 518.14 (1986) will not be reversed absent a clear abuse of discretion. *Bogen v. Bogen,* 261 N.W.2d 606, 611 (Minn.1977). The trial court did not clearly abuse its discretion in requiring appellant to pay $4,000 of the $9,000 in attorney fees incurred by respondent.

Respondent has also filed a notice of review seeking additional fees for the appeal pursuant to Minn.Stat. § 518.14. We decline to award respondent additional fees for the appeal.

### DECISION

The $20,000 additional property settlement granted to respondent in Conclusions of Law 4 and 12 in the judgment is vacated, and that amount returned to appellant. The property division is otherwise affirmed. The award of maintenance and attorney fees is affirmed. No additional fees on appeal are granted to either party.

AFFIRMED IN PART AND REVERSED IN PART.