*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-2278**

In Re the Custody of:
M.-T. L. B. and S.-A. L. B.
Rang Ngoc Bang, petitioner,
Appellant,

vs.

Yenthao Thi Vo,
Respondent.

**Filed August 4, 2014**
**Affirmed**
**Harten, Judge**[*]

Scott County District Court
File No. 70-FA-11-20354

M. Sue Wilson, Tasya Rivera Martin, M. Sue Wilson Law Offices, Minneapolis, Minnesota (for appellant)

Yenthao Thi Vo, Shakopee, Minnesota (pro se respondent)

Considered and decided by Johnson, Presiding Judge; Cleary, Chief Judge; and Harten, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HARTEN**, Judge

Appellant-father challenges the district court's denial of his motion to modify custody of the parties' children from joint legal and joint physical custody to sole legal and sole physical custody with appellant; he also challenges the district court's decision to rectify a discrepancy between appellant's parenting time and his child-support obligation by decreasing his parenting time from 50% to 44% rather than decreasing his child-support obligation from $1,785 to $1,294. Because we see no abuse of discretion in either decision, we affirm.

## FACTS

Both parties are natives of Vietnam. Appellant Rang Ngoc Bang, now 49, was 17 when he immigrated to this country in 1982. He finished high school, college, and graduate school here. At the time of trial in 2012, appellant's income from his job was $10,000 monthly.

Respondent Yenthao Thi Vo, now 41, was 25 when she immigrated in 1999. Her Vietnamese degrees in business and accounting are not recognized here. At the time of trial, her income from her part-time job as a clerk was $8.60 an hour and her imputed income for full-time work was $1,490 monthly.

In 2005, the parties met through an internet site. They dated and began residing together. Their son, M., was born in 2007; their daughter, S., was born in 2009. In 2012, M. was diagnosed with autism disorder, mixed expressive and receptive language disorder.

In 2011, although the parties were living together, appellant filed a petition to establish custody and parenting time, seeking joint legal and joint physical custody. Respondent filed a counter-petition seeking sole legal and sole physical custody with her; appellant amended his petition to seek sole legal and sole physical custody with him.

In January 2012, after a hearing, an order for temporary relief provided that, because the parties were living together, they would have joint legal and joint physical custody, and appointed a neutral custody evaluator (NCE) to prepare custody and parenting-time evaluations.[1] In March 2012, after another hearing, a second order for temporary relief ordered the continuation of joint legal and physical custody, gave appellant parenting time from Friday afternoon to Monday morning and respondent parenting time from Monday morning to Friday afternoon, and gave respondent permission to retain a second custody evaluator (RCE).[2] Respondent moved out of appellant's home and retained RCE.

In August 2012, NCE filed a report recommending joint legal custody and sole physical custody with appellant, with parenting time for respondent of two afternoons a week and alternate weekends. Appellant moved the district court to adopt NCE's report. In September 2012, a third temporary order denied appellant's motion and ordered that the parenting-time schedule established by the March 2012 order remain in effect pending trial.

---

[1] In response to respondent's request to move with the children to Virginia, NCE also evaluated out-of-state removal. Respondent has since withdrawn this request.

[2] Appellant had also moved for an order that respondent vacate his home; the district court noted that it had no jurisdiction over that issue because this is not a marriage dissolution matter.

In October or November 2012, RCE provided a report recommending joint legal and physical custody and equal parenting time, including one day each week when the children would separate and one would be with each parent.

Following a three-day trial in January 2013, the district court ordered judgment awarding the parties joint legal and joint physical custody, adopting the 50% parenting-time recommendation of RCE's report, and requiring appellant to pay basic child support of $1,785, the guideline amount for a parent in his situation having parenting time between 10% and 45% of the time.[3]

In June 2013, appellant moved for amended findings of fact, conclusions of law, and order, seeking either sole legal and sole physical custody for himself with respondent having parenting time of two afternoons a week, alternate weekends, and one half-day per month with one child alone, or, in the alternative if both parties' parenting time remained at 50%, a reduction in his child-support obligation to the guideline amount of $1,294.

Following a hearing, the district court issued amending findings and conclusions of law retaining joint legal and joint physical custody but altering parenting time to roughly 56% with respondent and 44% with appellant by reducing the one night per week when each parent has only one child to one night per month, thus providing a parenting-time schedule consistent with appellant's child-support obligation of $1,785.

Appellant challenges the amendments, asserting that the district court abused its discretion in denying appellant's motion for sole legal and sole physical custody with

_____

[3] The guideline amount for a parent in appellant's situation having 50% parenting time is $1,294.

4

appellant and in reducing appellant's parenting time instead of his child-support obligation.

## D E C I S I O N

**Standard of Review**

"The district court has broad discretion in making child custody, parenting time, and child-support determinations." *Matson v. Matson*, 638 N.W.2d 462, 465 (Minn. App. 2002). The law "leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000). But, "[e]ven though the [district] court is given broad discretion in determining custody matters, it is important that the basis for the court's decision be set forth with a high degree of particularity." *Durkin v. Hinich*, 442 N.W.2d 148, 151 (Minn. 1989) (quotation omitted).

### 1.    Custody Determination

Appellant claims that the district court abused its discretion in not awarding him sole legal and sole physical custody. Specifically, he argues first that the district court disregarded respondent's mental health in violation of Minn. Stat. § 518.17, subd. 1(a)(9) (2012) (listing "the mental and physical health of all individuals involved" as one of the factors to be considered in determining a child's best interests).

The district court made extensive findings as to the parties' mental health:

> [The licensed psychologist who assessed both parties in regard to parenting and co-parenting issues] noted a few areas of concern for [r]espondent. [Respondent's] results on the Parenting Stress Index, Fourth Edition are somewhat concerning. Some of the elevated results, such as co-parent relationship stress and feeling of isolation are the result of her circumstances rather than an underlying mental health

5

problem. Viewing the overall results of the test, rather than some of the individual statements in isolation, the results are not as bad as they may at first seem. Respondent had only slightly above average levels of stress on the child domain. Her stress level on the parent domain was only at the 70th percentile, which is not that far beyond average. Her test score on the Child Abuse Potential inventory (CAP) was somewhat elevated on a scale that assesses risk for child abuse because she acknowledged using shaming and spanking (including spanking [M.] with a wooden spoon) as a disciplinary method. [The psychologist] found that the "CAP results do not raise major concerns." He also noted in his conclusion that the results of his testing should be considered more tentative than would normally be the case due to concerns about language barriers and cultural differences.

Respondent has also had issues with depression. [The psychologist] noted that she has received only "a relatively mild psychiatric diagnosis." While [r]espondent has not always fully followed treatment recommendations, she is not currently under a recommendation to be on any medications. There is no evidence that her depression has had a direct impact on the children. The Court finds that her references to suicide in Exhibit 19 [i.e., respondent's affidavit] were an overreaction to a very stressful situation and that based upon her testimony she was never legitimately considering suicide. While this type of overreaction is concerning, it is not nearly as concerning as a legitimately suicidal parent.

[In appellant's psychological evaluation,] [t]he test results on the CAP were deemed invalid by [the psychologist] because of an elevated score on the "lie" scale. According to [the psychologist, appellant] was unwilling to acknowledge even minor faults and problems. On the Parenting Stress Index, [appellant] had an elevation on the Defensive Responding scale, again suggesting that he was reluctant to acknowledge even minor faults and problems. Despite the defensive responses, he did score above average on one measure of child stress. The court is concerned that [appellant] would have shown results that raised similar concerns as [r]espondent, but he intentionally manipulated the test by not answering questions truthfully.

[NCE] reported that both parents have "striking deficits." The Court agrees with this, but to a lesser degree. It is clear that since the time that [NCE] was involved in the case [i.e., since January 2012; this opinion was issued in

6

October 2013] much progress has been made in addressing [M.]'s condition. Both parents have been provided with guidance on how to better deal with [M.]'s condition and both have been acting on the advice they have been given. Furthermore, some of what has been seen as parenting deficits by [NCE] and others could be primarily a matter of cultural differences. But the fact remains that these parents have been presented with a difficult situation and it appears that neither of them can adequately deal with it without a great deal of assistance and cooperation from the other. [M.]'s needs demand constant attention and redirection. Both parents would be better able to care for [M.] if they had custody approximately half of the time rather than one of them having a larger majority of the time.

Appellant claims that these findings do not meet the "high degree of particularity" standard. *See Durkin*, 442 N.W.2d at 151. First, appellant claims that the district court "failed to make any credibility findings with regard to" NCE, RCE, and the psychologist. But the district court quoted, paraphrased, and generally relied on the reports of NCE and the psychologist; when the district court occasionally disagreed with the reports, it was because the reports pertained to an earlier period of the parties' relationship. Thus, the district court's finding that NCE and the psychologist were credible may be inferred. In contrast, the district court never referred to and never appeared to rely on RCE's report; thus, a finding that the district court did not find RCE credible may also be inferred. *See Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009) (deferring to credibility determination inferred from district court's findings).

Appellant also argues that the district court "[did not] discuss the lack of detail and disorganized report of [RCE]"; "did not discuss the potential bias created by the fact that [RCE] is a friend of [respondent's then] counsel"; "made no finding regarding the fact[s] that [RCE] did not check [NCE's] sources and/or collaterals"; and "did not independently

7

evaluate each of the factors in her report, most notably, the parties' mental health." Appellant also claims it was "certainly an abuse of discretion for the [district] court to not disregard [RCE's] incomplete and unprofessional evaluation which did not comply with Minn. Stat. § 518.17." But the district court apparently did disregard RCE's report and therefore did not abuse its discretion.

Appellant also argues that the district court "went through the best-interest factors in a perfunctory manner," but the district court's lengthy analysis of factor 9, the mental-health factor, has been presented and is hardly perfunctory. Moreover, five of the factors on which the district court's treatment is brief and could be described as perfunctory are obviously irrelevant, and appellant makes no specific objection to the district court's handling of any of them.[4]

Appellant acknowledges that the district court noted that respondent "acknowledged using shaming and spanking (including spanking [M.] with a wooden spoon)" but argues that "the [district] court made no further finding as to how this form of abusive parenting impacts the children, and why, all other things being equal, admitted child abuse on an on-going basis would not be dispositive in a custody decision." But

---

[4] They are: factor 2, the children's preference, as to which the district court found that the children are too young to express a preference; factor 6, the children's adjustment to home, school, and community, as to which the district court found that both children are well-adjusted and neither parent is planning to move them; factor 8, the permanence of the family unit, as to which the district court found that neither party plans to move or make any change in the family structure; factor 10, the parties' capacity to give the children love and affection and raise them in their culture or religion, as to which the district court found that both parties have that capacity and there are no obvious cultural or religious disagreements; and factor 11, the children's cultural background, as to which the district court found the parties share a cultural background and there are no cultural disputes.

8

"[t]he court may not use one factor to the exclusion of all others," Minn. Stat. § 518.17, subd. 1(a), and therefore none of the best-interests factors is dispositive. Moreover, in her brief respondent says appellant hit M. hard enough to bruise him in October 2010 and slapped M. leaving marks on him in August 2011 because M. would not stop whining; she also says "'discipline with spanking' is part of Asian culture." Appellant did not refute these assertions.

Appellant has not shown that the district court's findings were inadequate or that the award of joint legal and physical custody was an abuse of discretion.

## 2. Change in Parenting Time

If a child-support obligor has the children between 10% and 45% of the time, 12% of the child-support obligation is deducted as a parenting-expense adjustment. Minn. Stat. § 518A.36, subd. 2 (2012). But, if the obligor has the children between 45.1% and 55% of the time, the obligation is his proportionate share of 75% of the combined child-support obligation (CCSO) less the obligee's proportionate share of 75% of the CCSO. Minn. Stat. § 518A.36, subd. 3 (2012). Thus, if the CCSO is $1,000, and the obligor's proportionate share is 65%, or $650, having 45% of parenting-time results in an obligation of $572 ($650 minus 12%, or $78), but having 45.1% of parenting time decreases the obligation to $225 (65% of $750, or $487.50, minus 35% of $750, or $262.50).

Here, the CCSO was $2,331; appellant's proportionate share was 87%, or $2,028. Thus, his child-support obligation if his parenting time was between 10% and 45% of the time was $2,028 minus 12%, or $1,785; his child-support obligation if his parenting time

9

increased to 45.1% or more declined to $1,294 (75% of $2,331 is $1,748; appellant's 87% share of $1,748 is $1,521; respondent's 13% share of $1,748 is $227; $1,521 minus $227 is $1,294).[5] The district court, in response to appellant's motion to amend, resolved the discrepancy between his parenting time and his child-support obligation by reducing parenting time from 50% to 44% and retaining the $1,785 child-support obligation rather than by reducing the child-support obligation by 27.5%, from $1,785 to $1,294, and retaining the 50% parenting time.

A district court has broad discretion in both deciding parenting-time questions and modifying child support. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995) (parenting time); *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984) (child support). In regard to parenting time, discretion is abused if the district court makes findings unsupported by the evidence or misapplies the law. *Hagen v. Schirmers*, 783 N.W.2d 212, 215 (Minn. App. 2010). In regard to child support, discretion is abused if the district court sets support in a manner that is against logic and the facts on the record or misapplies the law. *Rutten*, 347 N.W.2d at 50. We see no findings against the evidence, nothing illogical, and no misapplication of the law in the district court's decisions on parenting time and child support.

**Affirmed.**

---

[5] In this case, a .1% increase in the obligor's parenting time, from 45% to 45.1%, results in a 27.5% decrease in his child-support obligation, from $1,785 to $1,294.