**In the Best Interest of M.R.P.-C., Minor Child.**

**In re the Matter of Kathryn Michelle Pollard, et al., petitioners, Respondents,**

v.

**Faye Michelle Crowghost, Co-respondent, Appellant,**

**Anthony Patrick Pollard, Co–Respondent.**

No. A10–1274.

Court of Appeals of Minnesota.

Jan. 25, 2011.

Colleen Goggins King, New Prague, MN, for respondents.

Bruce Jones, Jennifer Y. Dukart, Faegre & Benson LLP, Minneapolis, MN; and Angel Daher, ICWA Law Center, Minneapolis, MN, for appellant.

Anthony Patrick Pollard, Brainerd, MN, pro se respondent.

Dakota County Department of Child Support, West St. Paul, MN, respondent.

Julie Friedrich, West St. Paul, MN, guardian ad litem.

Considered and decided by CONNOLLY, Presiding Judge; KLAPHAKE, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant Faye Michelle Crowghost challenges the district court's order granting permanent legal and physical custody of her child, M.R.P.-C., to respondents Kathryn Michelle Pollard and Marvin Warzecha, the child's paternal grandparents. Because the district court failed to conduct an evidentiary hearing and to make adequate findings on the issue of whether respondents satisfy the statutory requirements of de facto custodians and because the district court did not inquire into whether ICWA applied to M.R.P.-C.'s custody proceedings, we conclude that the district court abused its discretion by granting respondents' custody petition. We therefore reverse and remand.

## FACTS

Appellant is the mother of M.R.P.-C., a minor child who was born August 28, 2007. Following separate district court proceedings, respondents were granted temporary legal and physical custody of M.R.P.-C. on August 18, 2009. In December 2009, respondents petitioned for permanent legal and physical custody of M.R.P.-C. as de facto custodians pursuant to Minn.Stat. § 257C.01, subd. 2 (2010). Respondents alleged that "for approximately half of the minor child's life, the child has resided in the [respondents'] home under the [respondents'] care and supervision, with the [appellant's] knowledge and consent. The [respondents] are the De Facto custodians of the minor child." The petition also alleged that appellant and Anthony P. Pollard, the child's father, "have been unwilling or unable to provide for the proper care, safety and welfare of the minor child."

The district court held a hearing on respondents' petition on December 18, 2009. Respondents' counsel informed the district court that the parties had agreed that respondents would maintain temporary custody of M.R.P.-C. and that a guardian ad litem (GAL) should be appointed to determine the best interests of M.R.P.-C. As a result, the district court issued an order appointing the GAL, confirming that respondents were to maintain temporary physical and legal custody of M.R.P.-C., granting appellant parenting time "in accordance with the future recommendations of the [GAL]," and scheduling a review hearing for May 2010.

The GAL submitted her report and recommendations to the district court on April 27, 2010. The report describes appellant's involvement in M.R.P.-C.'s life.

According to the report, appellant originally left M.R.P.-C. in the care of her parents, who are alcoholics, because she was homeless and unemployed. The report also states that in August 2009, appellant became concerned for M.R.P.-C.'s welfare, and she informed the district court that she wanted M.R.P.-C. to live with respondents. As of the date of the GAL's report, respondents had been the primary caretakers for M.R.P.-C. for nearly one year, and appellant had been unable to secure stable, permanent housing. The GAL concluded that because neither parent had a permanent address or could take care of M.R.P.-C., the child "would be endangered physically and/or emotionally if he were placed in the custody of either of his parents." The GAL also concluded that, after considering the best-interests factors in Minn.Stat. § 257C.04, subd. 1(a) (2010), it would be in M.R.P.-C.'s best interests to "permanently live in the sole physical and sole legal custody of his paternal grandparents" with regular, supervised parenting time with appellant.

The review hearing took place on May 7, 2010. Because appellant did not have a permanent address, she first received a copy of the GAL's report that morning. Counsel for respondents argued that they should be awarded sole permanent legal and physical custody of M.R.P.-C. In response, the district court stated, "I'm going to give [respondents] permanent custody. It's parenting time we are talking about. I don't think there is any question but it's in the child's best interest." According to appellant, she had not discussed the matter with her tribe because she "didn't think anything like this would happen." As a result, appellant informed the district court that she would be back in court. The district court stated, "You have rights under the [Indian Child Welfare Act]. So that's up to you."

The district court issued its findings and order on May 21, 2010, granting respondents permanent physical and legal custody of M.R.P.-C. and granting appellant supervised parenting time.

Appellant immediately appealed the custody determination, but judgment was not entered until July 28, 2010. Appellant subsequently moved to extend appellate review to include the judgment, and this court granted the motion.

## ISSUES

I. Did the district court comply with the statutory provisions governing de facto custodians?

II. Did the district court abuse its discretion by granting respondents' petition for permanent legal and physical custody of M.R.P.-C. without inquiring into whether ICWA applies to the custody determination?

## ANALYSIS

### I.

Appellant contends that respondents do not have standing to petition for custody as de facto custodians of M.R.P.-C. The issue of standing is a question of law, which we review de novo. *Longrie v. Luthen,* 662 N.W.2d 150, 153 (Minn.App. 2003), *review denied* (Minn. Aug. 19, 2003). Whether a party has standing to petition as a de facto custodian is governed by Minn.Stat. § 257C.03 (2010). A petition for custody must allege the basis for jurisdiction, meaning that the petitioner must allege that he or she satisfies the requirements of a de facto custodian. Minn.Stat. § 257C.03, subd. 2(a)(5). Specifically, the petition must allege that the petitioner has been the child's primary caretaker and that the child has lived with the petitioner for at least six months without a parent

present and without demonstrated consistent participation by a parent.[1] Minn.Stat. § 257C.01, subd. 2.

Importantly, the statute provides one standard for the allegations in the petition and a separate, heightened standard for the petitioner's ultimate burden. Minn. Stat. § 257C.03, subd. 2(b), states that "the petition must be verified by the petitioner ... and its allegations established by competent evidence." This burden has been interpreted as requiring only that the petition allege facts which, if proven, would show that the petitioner meets the definition of a de facto custodian. *Lewis–Miller v. Ross,* 710 N.W.2d 565, 570 (Minn.2006) (interpreting the statutory process for petitioning as an interested third party, which is similar to the process governing de facto custodians); *cf.* Minn.Stat. § 257C.03, subd. 6 (requiring the petitioner to demonstrate that he or she meets the requisite criteria of a de facto custodian by clear and convincing evidence).

Respondents' petition alleged that "for approximately half of the minor child's life, the child has resided in the [respondents'] home under the [respondents'] care and supervision, with the [appellant's] knowledge and consent." That assertion, if true, would satisfy the first element of a de facto custodian—that M.R.P.-C. had lived with respondents for at least six months of the preceding two years. The petition further alleged that appellant had been "unwilling or unable to provide for the proper care, safety and welfare of the minor child." This allegation, if true, would establish the second element—that no parent was present during that time frame and that there was a lack of demonstrated consistent participation by a parent during that time. Because respondents needed only to allege facts that, if true, would

establish that they were de facto custodians, the district court did not err in allowing respondents to proceed with their custody petition. Respondents were entitled to an evidentiary hearing.

■ But appellant also contends that the district court erred by not making findings on the issue of whether respondents are indeed de facto custodians. Minn.Stat. § 257C.03, subd. 6(a), states that a party petitioning for custody as a de facto custodian must "(1) show by clear and convincing evidence that the individual satisfies the definition of [a de facto custodian] and; (2) prove by a preponderance of the evidence that it is in the best interests of the child to be in the custody of the de facto custodian." The statute lists six factors that must be considered by the district court "in determining a parent's lack of demonstrated consistent participation" and requires the district court to consider an additional 12 factors to determine whether custody with the de facto custodian is in the child's best interests. Minn. Stat. § 257C.03, subd. 6.

The hearings following respondents' petition for custody of M.R.P.-C. were not evidentiary hearings. The record of the first hearing indicates that the parties had earlier agreed that respondents would retain temporary legal and physical custody of M.R.P.-C., that the GAL would remain on the case, and that the GAL would review the matter and determine what would be in the best interests of M.R.P.-C. The subsequent hearing was a "review hearing," where the district court granted respondents permanent legal and physical custody. Thus, there are no factual findings in the record that permit us to determine whether respondents meet the statutory burden to

---

1. At the time of the petition, M.R.P.-C. was two years old, so the six-month time frame of the statute applied to respondents' petition. *See* Minn.Stat. § 257C.01, subd. 2(a)(1).

prove their de facto custodian status or whether the district court engaged in the required analysis of the best-interests factors. Therefore, we remand for an evidentiary hearing on the issue of whether respondents satisfy the requirements outlined in Minn.Stat. § 257C.03, subd. 6.

## II.

Appellant challenges the district court's decision to grant respondents permanent custody of M.R.P.-C. on the ground that it failed to comply with the requirements of ICWA. A district court has broad discretion to provide for the custody of children. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). "Appellate review of custody determinations is limited to whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). Findings of fact are sustained unless they are clearly erroneous. *Id.*

Appellant contends that the district court had the obligation to inquire into whether ICWA applies to the resolution of M.R.P.-C.'s custody. In determining whether ICWA applies, "first, it must be determined that the proceeding is a 'child custody proceeding' as defined by the Act. Once it has been determined that the proceeding is a child custody proceeding, it must then be determined whether the child is an Indian child." *In re Welfare of S.N.R.*, 617 N.W.2d 77, 80 (Minn.App.2000) (quotation omitted), *review denied* (Minn. Nov. 15, 2000). Because ICWA applies to de facto custody proceedings, Minn.Stat. § 257C.02(a) (2010), we must determine whether the district court abused its discretion by failing to inquire into whether M.R.P.-C. is an Indian child as defined by ICWA. An "Indian child" is defined as an unmarried individual under the age of 18 who is a member of an Indian tribe or who is "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4).

We recognize that none of the parties meaningfully raised the issue of M.R.P.-C.'s potential status as an Indian child to the district court. And this court has not previously addressed whether a district court has an affirmative obligation to inquire into a child's status as an Indian child. Minnesota courts have frequently looked to the guidelines published by the Bureau of Indian Affairs in construing ICWA provisions. *See, e.g., S.N.R.,* 617 N.W.2d at 81. According to the Guidelines, "[w]hen a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court shall seek verification of the child's status from either the Bureau of Indian Affairs or the child's tribe." Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584, 67,586 (Nov. 26, 1979) (hereinafter BIA Guidelines).

We note that other jurisdictions have utilized this language from the BIA Guidelines to impose an obligation on a district court to either inquire further or to proceed pursuant to ICWA when it has reason to believe that the child may qualify as an Indian child. *See, e.g., In re J.M.,* 353 Mont. 64, 218 P.3d 1213, 1217 (2009) (noting that a district court abuses its discretion by failing to proceed under ICWA when it has reason to believe that the child is an Indian child and that the district court has an obligation to suspend proceedings and resolve the issue of the child's status at that time); *In re Trever I.,* 973 A.2d 752, 758 (Me.2009) (explaining that a district court has the obligation to verify the child's status if it has reason to believe that the child might be an Indian child and holding that the district court

complied with this mandate by inquiring into whether the father was a member of a federally recognized tribe at the hearing); *In re J.J.C.*, 302 S.W.3d 896, 901 (Tex.App. 2009) (holding that the district court had the obligation to proceed under ICWA because it had reason to believe that the children were "Indian children" when information demonstrated that the children's grandmother was enrolled in an Indian tribe). Based on the language of the BIA Guidelines and consistent with other jurisdictions, we conclude that a district court has an affirmative obligation to inquire into whether ICWA applies to a custody determination when it has reason to believe that the child subject to the determination is an Indian child as defined by the act.

The BIA Guidelines provide guidance as to circumstances in which ICWA might be applicable. For example, when any party to the case, a public or state-licensed agency involved in child-protection services, or an officer of the court involved in the proceeding provides information that suggests that the child is an Indian child, the district court has reason to question whether the child involved is an Indian child. BIA Guidelines, 44 Fed.Reg. at 67,586. In this record, the GAL's report describes M.R.P.-C.'s cultural background as "American Indian as well as African American." In addition, the district court itself acknowledged at the custody-determination hearing that ICWA might apply to the proceedings. We conclude based on the GAL's description of M.R.P.-C. as "American Indian" and the district court's acknowledgment that appellant has rights under ICWA, that the district court here had a sufficient basis to believe that M.R.P.-C. is an Indian child as defined by

ICWA and therefore had the obligation to inquire into whether the ICWA provisions apply before rendering its custody determination. We therefore reverse and remand for a hearing on the issue of whether M.R.P.-C. is an Indian child as defined by ICWA.[2]

### DECISION

Because the record is unclear as to whether respondents satisfy their burden of proving the statutory requirements of de facto custodians and because the district court abused its discretion by failing to inquire into whether M.R.P.-C. is an Indian child as defined by ICWA, we reverse and remand for an evidentiary hearing.

**Reversed and remanded.**

---

**2.** Appellant also argued that she was not provided procedural due process before the custody hearing. Because we are reversing and remanding for a hearing, we do not address this argument.