*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0353**

In Re the Custody of: A. J. O.
David Ortiz, petitioner,
Respondent,

vs.

Sarah Judith Un,
Appellant.

**Filed December 14, 2015
Reversed
Kirk, Judge**

Steele County District Court
File No. 74-FA-13-2285

David Ortiz, Owatonna, Minnesota (pro se respondent)

Crysta L. Parkin, Southern Minnesota Regional Legal Services, Inc., Rochester, Minnesota; and Julia Craig, Southern Minnesota Regional Legal Services, Inc., Mankato, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Worke, Judge; and Smith, Judge.

# U N P U B L I S H E D   O P I N I O N

**KIRK**, Judge

Appellant-mother argues that the district court erred by (1) finding that domestic abuse had not occurred between the parties; (2) awarding the parties joint legal custody of

their child; and (3) requiring the parties to engage in alternative dispute resolution. Because the district court erred in each respect, we reverse.

## FACTS

Appellant-mother Sarah Judith Un and respondent-father David Ortiz are the parents of four-year-old A.J.O. The parties have never been married. They resided together from March 2010 through October 2013, when they separated.

*Order for protection proceedings*

On November 25, 2013, mother filed an ex parte petition and supporting affidavit seeking an order for protection (OFP) against father. She alleged that, earlier that month, father had kicked in the door to her home and shoved her, slashed the tires of the vehicles parked in her driveway, and threatened to "go after anyone" in her home. Mother expressed fear of being at her place of employment because father had been going there.

That same day, the district court issued an emergency OFP, effective for two years. It found that mother's "[p]etition alleges an immediate danger of domestic abuse" and that she "need[s] an order for protection." At trial in the matter on appeal, father agreed that he "did not contest the allegations in that [OFP]." In December, the district court modified the OFP so that father was entitled to specified parenting time with the child, pending a parenting-time decision in the instant case. Father did not receive all parenting time under this order, first because he was in a detoxification unit and later due to mother's denial of his parenting time.

2

*Custody proceedings*

On December 11, father initiated this matter by personally serving mother with a petition to establish custody and parenting time. Father initially sought sole legal and sole physical custody of the child, but moved for joint legal and joint physical custody in January 2014. Mother sought sole legal and sole physical custody of the child.

At trial, mother and four witnesses provided detailed testimony indicating that father had been violent and had physically abused mother and/or caused her to fear physical harm. Mother also called a child protection social worker with 19 years of experience who had worked with the family from November 2012 to January 2014. The social worker testified that, in September 2013, she felt physically unsafe around father when she visited the family home and thereafter requested assistance from law enforcement. The social worker suspected that father was abusing mother, despite the fact that mother never disclosed any abuse.

Mother testified that she had recently allowed two parenting-time schedule changes to accommodate father, and felt that they were able to have discussions related to the child. When asked whether she believed that father "can be reasonable and compromise," mother responded, "To a certain extent. The last couple times have been—if they're short he's okay."

Father testified on his behalf and called his mother as a witness. Father did not deny physically abusing mother or profess an ability to cooperate with mother. He did testify that, during the parties' relationship, he did not "get in trouble with law enforcement or anything like that." He also vaguely challenged the testimony presented by mother, stating

3

that most of the witnesses hardly knew him and that "some" of mother's testimony was untrue. Father's mother testified that, while the parties resided with her for three or four months, she did not observe them arguing or see father physically abuse mother.

In its findings of fact, conclusions of law, order for judgment and judgment and decree entered on August 5, 2014, the district court granted mother sole physical custody of the child and granted the parties joint legal custody. It also required the parties to use alternative dispute resolution (ADR) prior to bringing a future motion regarding decision-making responsibilities or parenting time.

On the domestic-abuse-best-interests factor, the district court found:

> There has been domestic abuse between the parties as recently as November 2013. [Mother] likely has exaggerated some of her claims to further her goals in this litigation. However, [father] was the aggressor in the November 2013 event, and his alcohol abuse has been a significant contributing factor.
> *This factor favors [mother]*.

*See* Minn. Stat. § 518.17, subd. 1(a)(12) (2014).[1]  In regard to the joint-custody factors stated in Minn. Stat. § 518.17, subd. 2 (2014), the district court found that mother is willing to cooperate with father in rearing the child and that father "would like to develop this kind of co-parenting relationship as well." The district court found the factor related to resolving disputes to be neutral, in light of the parties' recent ability to resolve minor parenting-time

---

[1] Minn. Stat. § 518.17 (2014) has been substantially amended by 2015 Minn. Laws ch. 30, art. 1, §§ 3-5. Because the language of the statute does not contain clear evidence of retroactive intent, the amendments are not relevant to this appeal. *See* Minn. Stat. § 645.21 (2014) ("No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."); *K.E. v. Hoffman*, 452 N.W.2d 509, 512 (Minn. App. 1990) (holding that statute applicable to "all cases pending" had retroactive effect and applied to case on appeal, as a "pending" action), *review denied* (Minn. May 7, 1990).

4

disputes, and that it would be detrimental to the child if one parent had sole authority over her upbringing, as mother had used that authority in the past to limit the father-child relationship. Finally, the district court found that the domestic-abuse factor did not favor joint custody because "[d]omestic abuse as defined in [Minn. Stat. §] 518B.01 has occurred between the parties, and [father] has been the primary aggressor."

On September 8, mother filed a motion for amended findings of fact, conclusions of law, and order, or a new trial, arguing, in relevant part, that father had not overcome the presumption against joint legal custody and that victims of domestic abuse cannot be ordered to participate in ADR. In its order entered on December 24, the district court denied mother's request for a new trial and amended its paragraph on the domestic-abuse-best-interests factor to read as follows:

> [Mother] alleged that domestic abuse occurred between the parties as recently as November 2013. The Court finds that [mother] likely has exaggerated some of her claims to further her goals in this litigation and that the majority of her testimony on this subject was not credible. Further, the [d]omestic [a]buse [o]rder for [p]rotection . . . did not contain any findings of domestic abuse. Instead, [father] did not object to entry of an [o]rder for [p]rotection. Thus, the Court finds that there has been no domestic abuse between the parties. *This factor is neutral.*

Likewise, the district court amended the conclusion of law regarding the domestic-abuse-joint-custody factor to state that domestic abuse had not occurred between the parties and that the factor was neutral. It did not change its legal custody or ADR decisions.

Mother appeals.

5

## DECISION

### I. The district court clearly erred in finding that domestic abuse did not occur between the parties.

A district court's findings of fact will be sustained unless they are clearly erroneous. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985); *see* Minn. R. Civ. P. 52.01 (stating that findings of fact are not to be set aside unless clearly erroneous). A finding of fact is "clearly erroneous" if the reviewing court is "left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) (quotation omitted); *see also Chosa ex rel. Chosa v. Tagliente*, 693 N.W.2d 487, 489 (Minn. App. 2005). When determining whether findings are clearly erroneous, we view the record in the light most favorable to the district court's findings. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). Also, we defer to district court credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

In response to a motion to amend, a district court may amend an order sua sponte when there is record support for doing so. *See McCauley v. Michael*, 256 N.W.2d 491, 499-500 (Minn. 1977) (holding that the district court is free to review all evidence and findings on a motion to amend because the findings are frequently interrelated).

Under the Domestic Abuse Act, Minn. Stat. § 518B.01 (2014), the following acts constitute domestic abuse, "if committed against a family or household member by a family or household member": "(1) physical harm, bodily injury, or assault; (2) the infliction of fear of imminent physical harm, bodily injury, or assault; or (3) terroristic threats . . . ; criminal sexual conduct . . . ; or interference with an emergency call." *Id.*, subd. 2(a).

6

Here, even viewing the record in the light most favorable to the finding that domestic abuse did not occur between the parties, this court is "left with the definite and firm conviction" that the district court erred. *Fletcher*, 589 N.W.2d at 101; *see Vangsness*, 607 N.W.2d at 472. There is extensive evidence of domestic abuse and negligible contrary evidence. At a minimum, mother testified to threats of significant imminent physical harm by father, including occasions when father punched holes in the wall, threw things at her, such as a full can of beer, swung at her, broke her vehicle's windows, and broke her front door. Mother also described two incidents in which she physically defended herself and/or another against father, including one incident in which father had pulled a knife on his brother.

The district court found that mother's boyfriend observed father "forcibly enter" mother's home and call mother "offensive names." Her boyfriend testified that mother was fearful of father on this occasion. Mother's parents testified to observing bruises on mother during her relationship with father, but no physical injuries since the parties' separation, and that mother had disclosed to them that father had physically abused her. Her mother described a specific incident in which the parties were fighting and mother "came out with a bruise." Mother's long-time friend also testified to father fighting with mother while he yelled, screamed, and kicked the back of the friend's car seat. An experienced social worker suspected that father was physically abusing mother and feared father herself.

Father never specifically denied physically abusing mother, and, during his questioning of a witness, admitted to breaking mother's car window. The only other

evidence that he presented in response to the abuse allegations is that his mother did not observe any abuse in the early months of the parties' relationship.

In questioning mother's credibility with regard to the allegations of domestic abuse, the district court appeared to rely on its finding that mother obtained the OFP "just a few days" after father initiated the custody action. This finding is clearly erroneous, as the record plainly reflects that mother obtained the OFP one day before father filed any document in the custody matter and 16 days before father initiated the custody matter via personal service. In addition, the district court did not find the five other witnesses who described father's physical abuse or suspected physical abuse of mother to lack credibility.

Further, in reversing its domestic-abuse finding, the district court explained that mother exaggerated the alleged abuse and that she was also an aggressor, indicating that there was indeed abuse. Even if the record would support a finding that mother abused father, which it does not, mutual acts of domestic abuse do not support a finding of no abuse for purposes of a custody determination.

## II. The district court abused its discretion by granting the parties joint legal custody.

The district court has broad discretion in making custody determinations. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984); *In re Best Interest of M.R.P.-C.*, 794 N.W.2d 373, 378 (Minn. App. 2011). "Appellate review of custody determinations is limited to whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula*, 374 N.W.2d at 710.

The controlling principle in a custody determination is the child's best interests. *Id.* at 711; *see also* Minn. Stat. § 518.17, subd. 1(a) (enumerating 13 best-interests-of-the-child factors). The district court must consider and evaluate the 13 factors set out in Minn. Stat. § 518.17, subd. 1, to decide what custody and parenting-time arrangements are in the child's best interests. "[T]he effect on the child of the actions of an abuser, if related to domestic abuse, as defined in section 518B.01, that has occurred between the parents" is one of the best-interests factors. Minn. Stat. § 518.17, subd. 1(12).

If a parent proposes joint custody, the district court is obligated to address: (1) the parents' ability to cooperate in rearing their child; (2) the parents' methods for resolving disputes; (3) whether it would be detrimental to the child if one parent were to have sole authority over the child's upbringing; and (4) whether domestic abuse, as defined by section 518B.01, has occurred between the parents. Minn. Stat. § 518.17, subd. 2. There is a rebuttable presumption that joint custody is *not* in the child's best interests if domestic abuse has occurred between the parents. *Id.*

Under Minn. R. Evid. 301, "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption." The comment to this rule explains that, "If sufficient evidence is introduced that would justify a finding of fact contrary to the assumed fact[,] the presumption is rebutted and has no further function." *Id.*, 1977 comm. cmt.

Because domestic abuse occurred between the parents in this matter, the presumption against joint legal custody applies. *See* Minn. Stat. § 518.17, subd. 2. Father provided no evidence to rebut the presumption. He did not express a willingness to cooperate with

mother in matters relating to the child, describe effective methods of dispute resolution, or indicate that it would be detrimental to the child if mother had sole authority over her upbringing. There is no evidence in the record supporting the district court's finding that, "In spite of the past, [father] would like to develop . . . [a] co-parenting relationship." This finding is clearly erroneous.

Therefore, granting the parties joint legal custody was an abuse of discretion requiring reversal. We conclude that, as the child's physical custodian, mother shall have sole legal custody of her.

## III.    The district court erred in ordering ADR.

Minn. R. Gen. Pract. 310.01 provides, in relevant part, that "[a]ll family law matters in district court are subject to Alternative Dispute Resolution (ADR) processes as established in Rule 114," with limited exceptions. One exception is that:

> The court shall not require parties to participate in any facilitative process if one of the parties claims to be the victim of domestic abuse by the other party or if the court determines there is probable cause that one of the parties or a child of the parties has been physically abused or threatened with physical abuse by the other party. In circumstances when the court is satisfied that the parties have been advised by counsel and have agreed to an ADR process established in Rule 114 that will not require face-to-face meeting of the parties, the court may direct that the ADR process be used.

Minn. R. Gen. Pract. 310.01(b). Further, Minn. Stat. § 518.619, subd. 2 (2014), provides, in relevant part, that if the district court determines that there is probable cause that one of the parties has been physically abused by the other party, "the court shall not require or refer the

10

parties to mediation or any other process that requires parties to meet and confer without counsel, if any, present."

This court reviews the construction and application of procedural rules de novo. *Eclipse Architectural Grp. v. Lam*, 814 N.W.2d 692, 696 (Minn. 2012). To prevail on appeal, an appellant must show both error and prejudice resulting from the error. *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975).

Here, mother claimed to be the victim of domestic abuse by father, and there is more than probable cause that domestic abuse occurred between the parties. Therefore, the district court erred in requiring the parties to use ADR prior to bringing a future motion before the district court regarding decision-making responsibilities or parenting time.[2] *See Mechtel v. Mechtel*, 528 N.W.2d 916, 919 (Minn. App. 1995) (holding that the district court improperly ordered appellant to participate in mediation with her abuser when she had an ex parte OFP against him). Here, mother suffers prejudice from this error, in that it may inhibit her ability to safely resolve any parenting issues that arise in the future.

**Reversed.**

---

[2] We recognize that some of the language of Minn. R. Gen. Pract. 310.01(b) appears to conflict with Minn. Stat. § 518.619, subd. 2. *See* Minn. R. Gen. Pract. 301.01 (providing that "Rules 301 through 314 . . . shall apply to Family Law Actions except where they are in conflict with applicable statutes . . . ."). Because this issue has not been raised or briefed in this matter, we deem it to be waived and it is not before the court. *See Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988); *Balder v. Haley*, 399 N.W.2d 77, 80 (Minn. 1987).